UNITED STATES of America

v.

Robert Joseph MANCINI a/k/a
Robert Joseph Mengini.

No. 74–669.

United States District Court,
E. D. Pennsylvania.

June 30, 1975.

Joseph M. Fioravanti, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward Reif, McAllister & Reif, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the defendant's Motion for a New Trial after a jury verdict of guilty on both counts of a two count indictment. The indictment charged the defendant in Count I with burglary of the Philadelphia National Bank (PNB) branch located in the King of Prussia Plaza, King of Prussia, Pennsylvania on August 15, 1974.[1] Count II charged the defendant with larceny of the same bank.[2]

The defendant, in his Motion for New Trial, asserts that the Court erred in denying his oral motion for judgment of acquittal made at the conclusion of the Government's case and renewed after the defendant rested. (N. T. 3–13).[3] "In reviewing the denial of a motion for judgment of acquittal, the pertinent question is whether the trial court had reason to believe that there was sufficient evidence on which reasonable persons could find guilt beyond a reasonable doubt." *United States v. Leach*, 427 F.2d 1107 (1st Cir. 1970). It is not for the Court, ruling on a motion for a judgment of acquittal, to assess the credibility of witnesses or to weigh the evidence. 2 *Wright, Federal Practice and Procedure: Criminal* § 467, at 259. Rather, the Court must view the evidence in a light most favorable to the Government. *United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975); *United States v. Pratt*, 429 F.2d 690 (3d Cir. 1970). If a conviction is based on circumstantial evidence, the evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. *United States v. Giuliano*, 263 F.2d 582 (3d Cir. 1959). Applying this test, and viewing the evidence most favorably to the Government, we conclude that there was sufficient evidence for the jury reasonable to find the defendant guilty beyond a reasonable doubt.

On August 15, 1974, Joan Roskos, a PNB employee with 18 years of experience, was employed as a head teller for the King of Prussia office of PNB. On that day, she was working in a drive-in teller's booth which was situated in the Mall parking lot and was separated from the main PNB branch office located at the King of Prussia Mall. (N.T. 2–17). On August 15, 1974, Mrs. Roskos opened her teller's booth at 11:00 a. m. (N.T. 2–19). Sometime between 11:45 a. m. and 12:45 p. m., Mrs. Roskos observed a man walking directly toward the window of her teller's booth. (N.T. 2–20). She paid particular attention to this individual because of his distinctive dress, which consisted of a black banlon knit golf shirt, black pants, a white golf cap and sunglasses. (N.T. 2–21, 2–22). Between 12:45 p. m. and 1:45 p. m., Mrs Roskos observed this same individual as he again walked directly toward her teller's booth. (N.T. 2–23). At 1:45 p. m., Mrs. Roskos closed her teller's booth and prepared to settle her work for the day. At 2:20 p. m., after completing her settlement, Mrs. Roskos walked to the washroom of her booth in preparation for leaving the booth for lunch. She looked out of the window of the booth and saw two men sitting on a tree lined embankment behind the booth. (N.T. 2–23). Both men were looking toward her booth, and one of the men was the same individual who had twice walked

---

1. Count I charged a violation of 18 U.S.C. § 2113(a).

2. Count II charged a violation of 18 U.S.C. § 2113(b).

3. The defendant offered no evidence at trial. Therefore, the defendant's motions were made almost simultaneously and no additional evidence was required to be considered by the Court after we denied the first motion for a judgment of acquittal.

toward Mrs. Roskos' booth and who had attracted her attention because of his distinctive dress. (N.T. 2–24). Mrs. Roskos then took $11,000.00 out of the safe in her booth in order to replenish her cash drawer and be prepared for business upon her return from lunch at 3:00 p. m. (N.T. 2–25). After locking her cash drawer, Mrs. Roskos left the teller's booth and locked the door leading outside. On this occasion, because of the two men she had previously seen sitting on the embankment, Mrs. Roskos made certain that her door was locked. She then placed on a second security lock which was connected directly to the local police department. (N.T. 2–26).

Upon returning from lunch, Mrs. Roskos looked toward the embankment and noted that the two men were no longer there. Mrs. Roskos, when entering the teller's booth, noticed that the security lock had been turned off. She was not overly concerned, however, and assumed that perhaps the head teller had been in her booth for some reason during her lunch hour. (N.T. 2–27). At 3:00 p. m. when Mrs. Roskos opened her teller's booth for the afternoon's business, she discovered that her cash drawer was unlocked and empty. (N.T. 2–28, 2–29). She then promptly notified the proper bank officials.

At about 3:30 p. m. on the same afternoon, Mrs. Roskos gave a statement to agents from the F.B.I. During the course of the interview, she gave a description of the man who had earlier that day walked toward her teller's booth on two separate occasions. On August 27, 1974, Agent Sabinson, the F.B.I. agent assigned to the King of Prussia case, brought Mrs. Roskos a group of 12 photographs of individuals who fit the same general description as that of the person Mrs. Roskos had described on the day of the theft. (N.T. 2–31, 2–32, 2–78). Mrs. Roskos was unable to identify any of the photographs on that day. (N.T. 2–32, 2–81). However, pursuant to her request, Mrs. Roskos was again shown the same 12 photo-

graphs on February 7, 1975, and on that occasion identified a photograph of the defendant as the person who had twice walked past her booth on the day of the theft. (N.T. 2–33, 2–85). Mrs. Roskos also made an in court identification of the defendant as the person who had twice walked past her teller's booth and as the man who had been seated on the embankment on the day of the theft. (N.T. 2–31).

Agent Sabinson testified that on August 15, 1975, he fingerprinted the interior of the teller's booth which had been burglarized. (N.T. 2–70). During the course of this fingerprinting, Agent Sabinson lifted a latent fingerprint from the top handle of the safe inside the booth. (N.T. 2–72). After conducting this fingerprinting, Agent Sabinson policed the area where Mrs. Roskos had observed the two men sitting on the embankment. (N.T. 2–74). He located and secured from this area a paper cup, a crumpled-up cigarette package without a lining and a piece of white paper which was lined on one side with aluminum foil and which appeared to be the lining to the empty cigarette package. (N.T. 2–75).

The Government also produced a fingerprint specialist employed by the F.B. I. (N.T. 2–148). This expert testified that he had determined, after a comparison of the latent fingerprint taken from the top handle of the safe located in the burglarized teller's booth and the known left thumb print of the defendant, that both prints were made by the same finger. (N.T. 2–160). He further testified that latent prints developed from the crumpled cigarette package and the discarded lining of the package, both of which had been sent to him by Agent Sabinson, were identical to the known left index fingerprint of the defendant. (N.T. 2–160, 2–161).

The Government also produced an auditor employed by PNB who testified that he arrived at the King of Prussia branch at about 3:50 p. m. on the day of the burglary. He then determined that

on August 15, 1974, there was a $13,052.00 loss in that booth. The Government also produced testimony which established that the defendant had no recent employment record with PNB and hand no employment record with the firm which has the janitorial contract with the King of Prussia branch of PNB. (N.T. 2–117, 2–124).

We are satisfied that the above outlined evidence, viewed in a light most favorable to the Government, is sufficient to support a jury verdict of guilty on the two counts charged in the indictment. The evidence showed that the defendant was outside the burglarized teller's booth on August 15, 1974, the day when $13,052.00 was stolen from that booth. It also establishes that at some time the defendant was inside the teller's booth and touched the safe handdle on the vault. From this evidence, the jury could reasonably conclude that on August 15, 1974, the defendant unlawfully entered the King of Prussia branch of PNB to commit a larceny, and that he did steal $13,052.00 which belonged to PNB.

■ In his new trial motion, the defendant contends that the jury's verdict was against the weight of the evidence. Such a motion is made pursuant to rule 33 of the Federal Rules of Criminal Procedure which provides that the Court may grant a new trial "if required in the interest of justice." A motion based upon the weight of the evidence, unlike a motion for judgment of acquittal, is directed to the sound discretion of the trial court, and the court may weigh the evidence and consider the credibility of witnesses. *United States v. Morris*, 308 F.Supp. 1348 (E.D.Pa. 1970). Indeed, it has been said that when ruling on such a motion the court sits as a thirteenth juror. 2 *Wright, Federal Practice and Procedure: Criminal* § 553, at 487. If the Court concludes that the verdict is contrary to the evidence, or its weight, and that a miscarriage of justice may have resulted, the verdict may be set aside and a new

trial granted. However, the remedy is to be sparingly used and only in exceptional cases. *United States v. Leach*, 427 F.2d 1107 (1st Cir. 1970). In reviewing the evidence and assessing the credibility of the witnesses, we find that the verdict in this case was fully justified by the evidence.

The defendant's final contention is that the Court erred in not granting a mistrial as the result of the testimony given by Frank Hand, an evidence technician for the City of Philadelphia. Mr. Hand was called by the Government to establish that the fingerprints shown on a Government exhibit were the known fingerprints of the defendant, to which the latent prints found in the teller's booth and on the articles found near the booth were compared. During the examination of Mr. Hand, the following exchange occurred:

THE ASSISTANT U.S. ATTORNEY: What are your duties there?

MR. HAND: To fingerprint, search and sometimes to take a picture of the suspect.

THE ASSISTANT U.S. ATTORNEY: Were you so employed on May 18th of 1974?

MR. HAND: Yes, I was.

THE ASSISTANT U.S. ATTORNEY: And do you recall your duties on that date?

MR. HAND: Yes. At that time I was fingerprinting.

THE ASSISTANT U.S. ATTORNEY: Have you ever seen the defendant seated here in the courtroom, Mr. Mancini, the man to my right at counsel table.

MR. HAND: Yes, yes, I have.

The defendant then moved for a mistrial contending that the reference to "the suspect" and the fact that the date of May 18, 1974 was mentioned, disclosed to the jury that the defendant had had a prior contact with the law. (N.T. 2–130, 2–131). The Court denied the motion for a mistrial and stated that a cautionary instruction would be given to

the jury if the defendant so requested. (N.T. 2-132, 2-133). The defendant then stated that he did not want the Court to give such a cautionary instruction at that time, but wanted such an instruction at the time the Court charged the jury. (N.T. 2-134). Before proceeding with the questioning of Mr. Hand, the Court, out of the hearing of the jury, cautioned the Government to use great care in eliciting testimony containing words which could indicate to the jury that the defendant had a prior criminal record or prior contact with the law. (N.T. 2-134).

The direct examination of Mr. Hand then continued as follows:

> (Card bearing fingerprints of Robert J. Mancini, dated May 18, 1974, was marked Government Exhibit G-12 for identification.)
>
> THE ASSISTANT U.S. ATTORNEY: Would you look at that, Mr. Hand? Do you recognize that document?
>
> MR. HAND: Yes, I do.
>
> THE ASSISTANT U.S. ATTORNEY: Will you explain what that is?
>
> MR. HAND: That is the FBI's fingerprint card for the defendant on that particular date.

The defendant then renewed his motion for a mistrial, which the Court again denied. (N.T. 2-136).

At the end of the trial, pursuant to the request of the defendant, the Court gave the following cautionary instruction as part of the Court's charge to the jury:

> In this case, there was a witness, Mr. Hand—I think I have his name right—and he used the term or the phrase "suspect" and made a reference to the F.B.I. fingerprint card for the defendant on that particular date.
>
> I am ordering both of these phrases stricken from the record and I am ordering you not to consider these phrases in your deliberations.
>
> I further instruct you that any reference to any fingerprint should not

in any manner be interpreted by you to be an indication that the defendant has any prior criminal record. Many thousands of persons have fingerprints on file and yet have no criminal record whatsoever and you are not to draw any inference of any kind from the fact that the Government had the defendant's fingerprints on file on a date prior to the commission of this crime.

(N.T. 3-117, 3-118). Furthermore, the Court ruled that the F.B.I. fingerprint card of the defendant would not go out with the jury. (N.T. 3-140).

The defendant contends that the testimony of Mr. Hand in connection with his fingerprinting "the suspect" and that the card was the "F.B.I. card of the defendant" allowed the jury to believe that the defendant had a prior criminal record and that the cautionary instruction did not cure the defect.

It is well established in this Circuit that in a criminal prosecution "evidence of other offenses and prior trouble with the law is inadmissible . . . as part of the government's case against the defendant." *United States v. Hines,* 470 F.2d 225, 226 (3d Cir. 1972). However, as the Court stated in *United States v. Stirone,* 262 F.2d 571, 576-577 (3d Cir. 1958), the rule is qualified in the following manner:

> Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.
>
> Of course the trial judge may, in the exercise of this sound discretion, exclude evidence which is logically relevant to an issue other than propensity, if he finds that the probative value of such evidence is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice.

See also *United States v. Klein,* 515 F.2d 751 (3d Cir. 1975); *Government of Virgin Islands v. Glen Petersen,* 507 F.2d

898 (3d Cir. 1975); *United States v. Gimelstob*, 475 F.2d 157 (3d Cir. 1973).

■ In this case, the Government was required to establish the defendant's known fingerprints through the testimony of Mr. Hand. The probative value of the testimony given by Mr. Hand outweighed whatever prejudicial effects, if any, that his testimony produced. Furthermore, the admonition given by the Court in connection with the testimony of Mr. Hand was sufficient to expunge any possible prejudice to the defendant which may have arisen from the reference to "the suspect" and "the F.B.I.'s fingerprint card for the defendant."

Accordingly, the following Order is entered:

### ORDER

And now, this 30th day of June, 1975, upon consideration of the defendant's Motion for New Trial, it is hereby ordered that the motion is denied.