UNITED STATES of America

v.

Donald L. PEIFER.

Crim. No. 78–202.

United States District Court,
E. D. Pennsylvania.

Aug. 17, 1979.

Curtis E. A. Karnow, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Calvin Lieberman, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Defendant operates F. R. & S. Landfill in Exeter Township, Berks County, Pennsylvania. On April 26, 1978, Deputy United States Marshal James Duross entered defendant's property with a warrant authorizing a search for samples of water and effluent suspected of being illegally dis-

charged into the Schuylkill River.[1] Defendant hailed the marshal with the words, "So this is the big Marshal". Within a few moments after service of the warrant, defendant perused its content, objected to its form, declared it invalid and pocketed it promptly. He told the marshal that he, the defendant, would not allow the samples to be taken, and that if samples were taken, the marshal and accompanying employees of the Environmental Protection Agency (EPA) and Pennsylvania Department of Environmental Resources (DER) would not be permitted to leave the property.

During the next fifty minutes the search party engaged in various negotiations with the defendant to resolve their differences. The marshal drove his car to a higher point on the landfill several times to communicate by radio with his superiors in Philadelphia. Subsequently, the search party decided to commence the search and began to drive down an unpaved road out of the landfill area enroute to an adjacent area described in the search warrant. Waving his arms, defendant ran out into the middle of the road and motioned the vehicles, including the marshal's, over to the side of the road. The search party complied with defendant's demands. At that point defendant ordered an employee, David Hart, to position a pickup truck across the exit road, thus preventing the marshal's progress. During the late morning defendant's employees moved the truck several times to permit the ingress and egress of various vehicles, including refuse trucks and on one occasion the car of a state trooper. After each movement the truck was returned to its position across the road. At one point, defendant told Peter Bronner, a DER inspector and investigator, that the purpose of blocking the vehicles was to guarantee that he, Peifer, would be able to tow them out. At 12:45 P.M., approximately two hours after the marshal had served defendant with the warrant, he arrested defendant. The pickup truck was then moved out of the way and the search party continued to contiguous areas to begin sampling and tests.

After a six-day trial a jury convicted defendant of knowingly and willfully obstructing, resisting and opposing an officer of the United States in his service and execution of judicial process of a United States magistrate in violation of 18 U.S.C. § 1501. Defendant now moves for judgment of acquittal notwithstanding the verdict, and in the alternative for a new trial, contending that the Court erred in denying the defendant's pre-trial motions, erred in several evidentiary rulings and alleging that the verdict was contrary to the weight of the evidence.

I

Prior to trial defendant moved for a bill of particulars, in which he demanded names and addresses of persons present at the place of the incident and during a conversation between the defendant and "the victim", the make and model of the vehicles placed on the road, and the "exact nature of the inquiry or investigation by the Government upon which it predicated its answers and representations". Defendant also moved for the government's witness list, "for notice by the government of the intention to use evidence"[2], and to dismiss the information on the grounds of improper arraignment and venue and impermissible vagueness in the information.

The purpose of granting a bill of particulars under Rule 7(a) of the Federal Rules of Criminal Procedure is

to inform the defendant of the nature of the charges against him (so that he may) adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.

---

1. *See* 33 U.S.C. §§ 1311(a), 1319(c) and (d).

2. In effect this motion requested material potentially exculpatory to the defendant, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and materials described by Fed.R.Crim.P. 12(d)(2). The government represented that it had supplied all such materials, and on that basis defendant's motion was denied as moot.

*United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812, *reh. denied*, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972). However, the defendant is not entitled, in advance, to a complete preview of the government's evidence and case or to "wholesale discovery" of the prosecutor's file. *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir.), *cert. denied sub nom. Gazal v. United States*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), *United States v. Addonizio, supra* at 64. Prior to trial defendant is not entitled to know the identity of government witnesses through a motion for a bill of particulars or a discovery motion under Rule 16. *United States v. Mitchell*, 540 F.2d 1163, 1166 (3d Cir. 1976), *United States v. Addonizio, supra* at 64, *United States v. Smith*, 405 F.Supp. 144, 146 (E.D. Pa.1975), *United States v. Jaskiewicz*, 278 F.Supp. 525, 529 (E.D.Pa.1968). Similarly, defendant is not entitled to the statements of all government witnesses prior to trial. Fed.R.Crim.P. 16(b), Jencks Act, 18 U.S.C. §§ 3500(a) and (e)(3), *United States v. Feinberg*, 502 F.2d 1180, 1182 (7th Cir. 1974), *United States v. Smith, supra* at 145, *United States v. Leta*, 60 F.R.D. 127, 130 (M.D. Pa.1973), or disclosure of the government's legal theories or evidentiary details. *United States v. Addonizio, supra* at 64, *United States v. Conway*, 415 F.2d 158, 162 (3d Cir. 1969), *cert. denied*, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970), *United States v. Mt. Fuji Japanese Steak House, Inc.*, 435 F.Supp. 1194, 1198 (E.D.N.Y.1977), *United States v. Leonelli*, 428 F.Supp. 880, 882–83 (S.D.N.Y.1977), *United States v. Bloom*, 78 F.R.D. 591, 600 (E.D.Pa.1977).

■ Denial of the bill of particulars could not have adversely affected defendant's ability to prepare his defense adequately. He was present most of the time that the marshal stayed on the property and was obviously present when he ordered the pickup truck placed across the road. Defendant saw who was there and heard what was said. In light of the information provided under Rule 16 and gleaned from the probable cause hearing, the factual details and legal issues which arose at trial could hardly have been surprising.

■ Defendant also filed a pre-trial motion alleging violations of Fed.R.Crim.P. 5(a) and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and urging dismissal of the information because of the government's "(f)ailure to obtain proper venue by taking the defendant to Philadelphia, Pennsylvania, rather than to the nearest United States Magistrate in Reading." Defendant's Memo at 2. The purpose of Rule 5(a) is to guarantee that the government does not use delay between arrest and an initial appearance to subject defendants to unwarranted or coercive interrogation. *Mallory v. United States, supra* at 453–54, 77 S.Ct. 1356, *United States v. Gaines*, 555 F.2d 618, 622 (7th Cir. 1977). Where delay is not in fact used for that purpose, no prejudice results and *Mallory* is irrelevant. *United States v. Grandi*, 424 F.2d 399, 402–03 (2d Cir. 1970), *cert. denied*, 409 U.S. 870, 93 S.Ct. 199, 34 L.Ed.2d 121 (1971).[3]

In the case at bar defendant alleges that the "additional delay in awaiting transportation to Philadelphia was calculated to deprive the defendant of his constitutional guarantees". Defendant's Memo at 2. Yet defendant does not show what prejudice resulted from the alleged delay or upon what constitutional rights this delay impinged. Defendant obtained his initial hearing before a United States magistrate a few hours after arrest. Bail was posted, and defendant was advised fully of the charges against him. Government's agents elicited no statements from defendant between the time of his arrest and initial hearing. Therefore, no prejudice resulted from selection of Philadelphia as the place to bring defendant before a magistrate[4]. No relief was warranted.

---

**3.** Defendant's allegation of improper venue is without merit. Both the site of the offense and Philadelphia are in the Eastern District. No issue of venue therefore arises.

**4.** The *Mallory* court also noted that "(t)he duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or auto-

Defendant's final pre-trial motion assailed the information as fatally vague because it failed to name the officer of the United States allegedly intimidated and to state that the judicial process was legal in form and purpose and to name which United States magistrate issued it. The standard by which to test the sufficiency of an indictment or information is simply whether the time, place and elements of the offense charged are alleged therein. *United States v. Gibbons*, 463 F.2d 1201, 1202 (3d Cir. 1972), *United States v. Kenny*, 462 F.2d 1205, 1214 (3d Cir.), *cert. denied sub nom. Kropke v. United States*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972). Nowhere does defendant allege or suggest that these standards are not met. Instead, defendant complains that the information is defective because neither the magistrate authorizing the warrant nor the serving officer is named therein. But the issue is "not whether the information could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged". *Hagner v. United States*, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932). Defendant does not contest the fact that the information completely describes each element of the charged offense. Nor can defendant seriously assert that the identity of either the magistrate or serving officer remained unknown at trial. Defendant learned the identity of the serving officer during the probable cause hearing; the identity of the magistrate is patent from the search warrant itself, which the defense introduced into evidence at the probable cause hearing. Furthermore, discovery material which the government provided to defendant pursuant to Rule 16, information provided defendant at the probable cause hearing and facts set forth in the complaint and warrant sufficiently apprised defendant of the precise facts and issues to be litigated at trial. Policies supporting the requirement of a descriptive information are fully satisfied under these circumstances. Undoubtedly, defendant

matic obedience. Circumstances may justify a brief delay between arrest and arraignment".

would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that *(he) could rely upon parts of the present record* in the event that future proceedings should be taken against (him). [Emphasis added]
*Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). Accordingly, defendant's motion for a judgment of acquittal on the basis of improper pre-trial rulings will be denied.

## II

Defendant also predicates the present motion on several evidentiary errors. Specifically, defendant cites as error admission of "irrelevant" and "highly prejudicial" testimony by Maureen Brennan, an EPA attorney, and Peter Bronner regarding defendant's interference with their attempts to conduct the search. The lack of a relationship between the "evidence they presented and a matter properly provable in this case" and the implication that they "were cloaked with the authority of the United States Marshall (sic)", supposedly provide the basis upon which the Court should have excluded this testimony. Both Brennan and Bronner were eyewitnesses to the res gestae. Certainly their testimony, as with all incriminating evidence, was highly prejudicial to defendant. But the critical question is whether the admitted evidence is *unfairly* prejudicial. In light of its relevance and probity this evidence can hardly be considered unfair.

Defendant also challenges the Court's refusal to charge the jury that "(i)f you the jury find that (the marshal) did not authorize anyone to execute the search warrant you must find the Defendant Donald L. Peifer not guilty". Ordinarily, a defendant is entitled to have the jury instructed on the theory of his defense even though the evidence may be "weak, insufficient, inconsistent or of doubtful credibility". *United States v. Lehman*, 468 F.2d 93, 108 (7th Cir.), *cert. denied*, 409 U.S. 967, 93 S.Ct.

*Mallory v. United States, supra*, 354 U.S. at 455, 77 S.Ct. at 1359, 1360.

273, 34 L.Ed.2d 232 (1972). *See also United States v. Taglione*, 546 F.2d 194, 198 (5th Cir. 1977). However, where, as here, the theory of defense as stated is incorrect as a matter of law the Court properly declined to intromit the point for charge in its instructions to the jury. *United States v. Westbo*, 576 F.2d 285, 288 (10th Cir. 1978), *United States v. Hall*, 552 F.2d 273, 275 (9th Cir. 1977), *United States v. Hall*, 536 F.2d 313, 330 (10th Cir. 1976). Rarely does a marshal himself execute a search warrant requiring scientific expertise. The obvious purpose of bringing along the EPA and DER employees and a truck filled with scientific equipment was to have *them* locate the site and actually collect the water and effluent samples. In fact, Brennan testified that she and the marshal had an understanding that EPA would collect the samples.

Anticipating a situation of this type, Congress passed 18 U.S.C. § 3105, which provides that

A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, *except in aid of the officer on his requiring it, he being present and acting in its execution.*

Accordingly, the contemplated search was valid as one directed by the marshal, *United States v. Kennedy*, 457 F.2d 63 (10th Cir.), *cert. denied*, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972), *United States v. Joseph*, 174 F.Supp. 539 (E.D.Pa.1959), *aff'd*, 278 F.2d 504 (3d Cir.), *cert. denied*, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960), *Palmer v. United States*, 92 U.S.App.D.C. 103, 203 F.2d 66 (1953), *Nuckols v. United States*, 69 U.S.App.D.C. 120, 99 F.2d 353, *cert. denied sub nom. Floratos v. United States*, 305 U.S. 626, 59 S.Ct. 89, 83 L.Ed. 401 (1938), and because technical expertise was required to execute the warrant, the marshal's use of

assistance did not vitiate the search or affect his status as the named executing officer. *Romero v. Squier*, 133 F.2d 528 (9th Cir.), *cert. denied*, 318 U.S. 785, 63 S.Ct. 982, 87 L.Ed. 1152 (1943). The Court properly refused to charge the jury as requested by defendant.

■ Next, defendant labels the jury charge as conflicting, misleading, and "substantially" confusing. The Court instructed the jury, in part, as follows:

As I have stated previously the law never imposes upon the defendant in a criminal case such as this the burden or duty of calling any witnesses or producing any evidence.

\*　　\*　　\*　　\*　　\*　　\*

If a party offers weaker and less satisfactory evidence when in your belief stronger and more satisfactory evidence could have been produced, you may view the evidence offered with suspicion.

Defendant contends that the jury could have construed the second instruction to suggest that defendant's failure to take the stand constituted evidence of a "weaker and less satisfactory" case. The first statement was a reminder to the jury of defendant's Fifth Amendment right; the second was a charge *requested by defendant himself.* If, indeed, the jurors connected these two thoughts, the Court's repeated references to a defendant's right to refuse to testify and produce evidence certainly clarified any ambiguity which defendant's requested instruction may have created.[5]

■ Defendant also considers another pair of instructions confusing. The Court instructed the jury that

(a)n act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. *The purpose of adding the word 'knowingly' is to insure that no one will be convicted by an act done because of a*

---

5. *Five* times the Court cautioned the jury that "the law never imposes upon a defendant in a criminal case the burden or the duty of calling any witnesses whatever or producing any evidence". A *sixth* time the Court explained that "the law does not compel a defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be raised, and no inference of any kind may be drawn, from the failure of a defendant to testify".

*mistake or accident or other innocent reason.*

\* \* \* \* \* \*

It is not necessary for the prosecution to prove that the defendant knew that a particular act or failure to act is a violation of the law. *Unless and until outweighed by evidence to the contrary, the presumption is that every person knows what the law forbids and what the law requires to be done.*

Defendant complains that the jury could have interpreted the italicized portion of the second instruction to mean "that if an act is illegal, the Defendant is presumed to know the action was illegal". Defendant's Supplemental Brief at 19. Hopefully the jury did import that meaning to these words, for it is a correct statement of law. Every person *is* presumed to know the law. *United States v. Murdock,* 290 U.S. 389, 393–96, 54 S.Ct. 223, 78 L.Ed. 381 (1933), *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 68, 30 S.Ct. 663, 54 L.Ed. 930 (1910), *Williamson v. United States,* 207 U.S. 425, 453, 28 S.Ct. 163, 52 L.Ed. 278 (1907). Defendant further postulates that from this instruction the "reasonable juror could easily have presumed that the defendant knew James Duross was a United States Marshall (sic)". Defendant's Supplemental Brief at 19. The flaw in this argument is that defendant's knowledge of Duross' status was a question of fact, not law. The Court did not instruct the jury that defendant was presumed to know the facts.

Additionally, the first instruction, which defendant considers prejudicially confusing in light of the later one, deals with mistake of fact; the second instruction, mistake of law. As stated, both instructions were clear and accurate. The jury was instructed properly, *Carlton v. United States,* 395 F.2d 10, 12 (9th Cir. 1968), *cert. denied,* 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969), and defendant's motion for judgment of acquittal on this ground will be denied.

▇▇▇▇ Of the evidentiary errors asserted only defendant's challenge to the Court's refusal to hear testimony concerning the validity of the search warrant requires further comment. A defective warrant is no defense to a charge of resisting execution thereof. That issue is resolved through a later legal mechanism, the suppression hearing. *United States v. Ferrone,* 438 F.2d 381, 389–90 (3d Cir. 1971), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971).[6] Once a court with proper jurisdiction over the subject matter and person issues an order, it "must be obeyed by the parties until it is reversed". *United States v. United Mine Workers of America,* 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). Absent a showing of bad faith, unreasonable force or provocative conduct, defendant has no right to resist execution of a warrant, even a defective one. *United States v. Cunningham,* 166 U.S.App.D.C. 206, 208, 509 F.2d 961, 963 (1975), *United States v. Moore,* 483 F.2d 1361, 1364 (9th Cir. 1973), *United States v. Ferrone, supra* at 390.[7] *See also United States ex rel. Kilheffer v. Plowfield,* 409 F.Supp. 677, 680–81 (E.D.Pa.1976), *United States v. Gibbons,* 331 F.Supp. 970, 972–73 (D.Del.1971), *aff'd,* 463 F.2d 1201 (3d Cir. 1972). Defendant did not make any such claims. There-

**6.** The *Ferrone* court remarked:

Society has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes. We think a proper accommodation of interests requires that a person claiming to be aggrieved by a search conducted by a peace officer pursuant to an allegedly invalid warrant test that claim in a court of law and not forcibly resist the execution of the warrant at the place of search. The development of legal safeguards in the Fourth, Fifth, Sixth and Fourteenth Amendment fields in recent years has provided the victim of an unlawful search with realistic and orderly legal alternatives to physical resistance. *Id.* at 390.

**7.** *Moore* and *Cunningham* deal with the right to resist arrest. However, the same reasoning applies. *United States v. Ferrone, supra* at 390 n. 21.

fore, the validity of the search warrant served by Marshal Duross was irrelevant, and disallowing testimony on this issue was proper.[8]

### III

Defendant next attacks the verdict as contrary to the weight of and unsupported by the evidence. As the verdict winner, the government is entitled to have all the evidence, direct and circumstantial, viewed in a light most favorable to the government. Conflicting evidence may not be weighed; credibility of witnesses may not be evaluated. All reasonable inferences must be construed in favor of the government. *United States v. Downen*, 496 F.2d 314, 318 (10th Cir. 1974), *United States v. Mancini*, 396 F.Supp. 75, 76 (E.D.Pa.1975), *United States v. Holland*, 378 F.Supp. 144, 148 (E.D.Pa.), *aff'd*, 506 F.2d 1050 (3d Cir. 1974), *cert. denied*, 420 U.S. 994, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975). To prove the offense charged, the government was required to establish that the officer was attempting to execute judicial process of a United States magistrate, that the defendant obstructed, resisted or opposed the officer, and that the defendant acted knowingly and willfully. *See* 18 U.S.C. § 1501. The government did not need to show that defendant threatened or performed an act of violence, *Miller v. United States*, 230 F.2d 486 (5th Cir. 1956), *United States v. McDonald*, 26 Fed.Cas. 1074, 1077 (C.C.D. Maine 1879) (No. 15,667), only that defendant *or his agent* performed an act which delayed or interfered with the service or execution of process, *United States v. McDonald, supra* at 1077, for acts of an agent or employee commanded by defendant are chargeable to defendant as if he himself had performed the acts. *United States v. Wise*, 370 U.S. 405, 417, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962), *United States v. Deaton*, 563 F.2d 777 (5th Cir. 1977).

Defendant contends that the government did not establish each element.

According to defendant, the marshal testified that he never intended to execute the search warrant himself, that he authorized no one else to execute it, and therefore defendant could not have interfered with execution. As noted above, this argument is without merit. Defendant's final attack upon the verdict concerns defendant's alleged lack of specific criminal intent. That is, the government did not establish that defendant acted willfully and knowingly. Defendant claims that he did not know who the marshal was and therefore could not have intended to obstruct service. Testimony of the marshal himself contradicts these representations. Defendant, in fact, concedes that he greeted Duross with the words "So this is the big marshal". Defendant also received the warrant personally from the marshal. From this action alone defendant was on alert to the fact that Duross was a Federal officer. Defendant also refused to examine the marshal's identification and later told the marshal, "If you take samples on my property, you will not get off with them". From this testimony the jury reasonably could have concluded that defendant knew who Duross was and knowingly prevented execution of the warrant. From defendant's gesticulations, actions and words the jury could have reasonably concluded defendant acted willfully. Testimony of Maureen Brennan, Peter Bronner and David Hart supports these conclusions. Where, as here, substantial evidence supports the verdict, it must be sustained. *United States v. Trotter*, 529 F.2d 806, 811 (3d Cir. 1970).

### IV

Lastly, defendant assigns as error the Court's refusal to declare a mistrial after government counsel, in his closing remarks to the jury, supposedly indicated his own personal belief in defendant's guilt. Government counsel remarked, "I ask that you consider all the evidence and return here with a just verdict. In this case I

---

8. *A fortiori,* refusing to charge the jury as requested in defendant's first point for charge was not error.

believe that verdict is guilty, *based on the evidence*". This comment must be evaluated in light of the entire context and purpose of counsel's closing remarks.[9] *Hall v. United States,* 419 F.2d 582 (5th Cir. 1969). After reviewing the testimony of the witnesses called at trial, counsel importuned the jury to be fair and impartial by stating:

> Now, members of the jury, I suggest that that is the hard evidence, that is the essential evidence, that is the important evidence in this case. On every essential fact and element there can be no doubt in your minds as to what happened on April 26, 1978, at that landfill.
>
> And as you retire to the jury room and discuss this case amongst yourselves, I ask now that you hold firmly and remember two all-important duties that you have: The first duty is to the facts. First, put aside everything else but the facts, and to determine as best you are able what those facts are.
>
> The second duty, which is no less important, is one of fairness. Under your oath as jurors you are bound to be impartial and unswayed by sympathy for or against the defendant, for or against the government. You have promised to apply the law strictly as the judge gives it to you, and to give the defendant a fair trial, and to give the government a fair trial.
>
> I ask that you consider all the evidence and return here with a just verdict. In this case I believe that verdict is guilty, *based on the evidence.*

Having summarized the elements of the offense and evidence proffered as proof, counsel had the clear purpose of emphasizing to the jury that the evidence, not his judgment, supported a guilty verdict. *See United States v. Munford,* 431 F.Supp. 278, 289 (E.D.Pa.1977), in which the court found no prosecutorial excess when counsel stated

> Please consider the evidence. Consider it fairly for the government, consider it fairly for the defendants—and *I submit to you I think you will find that the evidence demonstrates that both are guilty.*

This is quite unlike the situation where the prosecutor's statements to the jury contained extrinsic evidence, *United States v. Schwartz,* 325 F.2d 355 (3d Cir. 1963), matters asserted as fact but not in evidence, *Dunn v. United States,* 307 F.2d 883 (5th Cir. 1962), or implications that the defendant withheld probative, inculpatory evidence, *McMillan v. United States,* 363 F.2d 165 (5th Cir. 1966). Likewise, insinuating that defendant is guilty of another unspe-

---

**9.** In fact, government counsel's closing remarks were a model of clarity and cogency. Urging the jurors to look past courtroom histrionics to the facts presented from witnesses and to the single issue for their consideration, counsel reviewed the events of the day in question. He continued:

> Members of the jury, if you look at all the evidence I believe it will become absolutely clear why that pickup truck was placed there. It was moved back and forth a number of times to let other vehicles in and out; for example the refuse trucks . . . Why would the defendant do that and not motion the marshal out? Why did the defendant stand in the middle of the road? And why did he threaten to tow out those cars? Why did he tell the marshal he would never get off the landfill if he took samples?
>
> I believe there is only one reasonable inference from this testimony: the defendant wanted to stop the search. And he knew exactly what he was doing. As the law phrases it, he did it knowingly and willfully.

Counsel later remarked that:

> (t)he judge will instruct you that 'obstruction' means to interpose or to impede. It means to hinder, impede, or in any manner interrupt or prevent . . . Did the defendant interrupt or impede the marshal when he told the marshal he wasn't going to collect samples, and that if he did he wouldn't get off the property with them?
>
> Listen to that instruction on obstruction and ask yourselves: Did the defendant hinder or interrupt the marshal when he ran out into the middle of the road and motioned the cars over?
>
> And ask yourselves, members of the jury, if the defendant interposed an obstacle when he ordered David Hart to pull that truck up into the middle of the road.
>
> The answers to these questions, I suggest, is "yes". . . . And it follows directly from that that the defendant did obstruct the marshal within the meaning of the statute that we are concerned with. That is the issue in this case.

Counsel's final statements to the jury are set out in the text.

cific offense, labelling defendant as socially undesirable or attaching epithets such as "hoodlum" or "bum" to defendant's name also fall outside the scope of proper prosecutorial forensics. *Hall v. United States, supra.* But the prosecutor is not restricted to a sterile recitation of the facts. *United States v. Greene,* 497 F.2d 1068 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). He is an advocate, *Homan v. United States,* 279 F.2d 767 (8th Cir.), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960), and "may prosecute with earnestness and vigor", *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). He may also

> summarize the evidence and urge upon the jury all reasonable inferences and deductions from the evidence. *It is not misconduct on his part to express his individual belief in the guilt of the accused if such belief is based solely on the evidence introduced* and the jury is not led to believe that there is other evidence, known to the prosecutor but not introduced, justifying that belief.

*Henderson v. United States,* 218 F.2d 14, 19 (6th Cir.), *cert. denied,* 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). *See also United States v. Somers,* 496 F.2d 723, 740 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974), *United States v. Benson,* 487 F.2d 978, 981 (3d Cir. 1973), *United States v. Schartner,* 426 F.2d 470, 477 (3d Cir. 1970). Government counsel in the case *sub judice* clearly expressed himself in terms based on the evidence and did not suggest to the jury that inculpatory evidence not introduced at trial also established defendant's guilt. Defendant's motion for judgment of acquittal will be denied.

### V

Defendant also moves for a new trial on the same grounds. The Court may grant a new trial "if required in the interest of justice". Fed.R.Crim.P. 33. Having found that substantial evidence supports the verdict and that the Court committed no prejudicial errors, we find no miscarriage of justice. Accordingly, defendant's motion for a new trial will be denied.