**UNITED STATES of America**

v.

**Joseph A. JOSEPH.**

**Crim. No. 81–00070.**

United States District Court,
E. D. Pennsylvania.

April 2, 1981.

Daniel B. Huyett, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Wallace C. Worth, Jr., Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The government has charged that defendant, the Clerk of Courts of Lehigh County, violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, by soliciting and accepting various amounts of cash from a bailbondsman in consideration for defendant's favorable recommendations and exercise of discretion in his official decisions. Defendant has filed several pre-trial motions addressed seriatim below.

First, defendant attacks the factual sufficiency of the indictment, which must allege

as an essential element of the crime that defendant's enterprise activities affected interstate commerce. *See* 18 U.S.C. § 1962. Defendant, contending that the indictment fails to state facts sufficient to constitute an effect upon interstate commerce, relies principally upon *United States v. Vignola*, 464 F.Supp. 1091 (E.D.Pa.), *aff'd*, 605 F.2d 1199 (3d Cir. 1979), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), which he cites for the proposition that the racketeering activities of a traffic court judge cannot have an effect upon interstate commerce absent maintenance of an out-of-state office. Since the Lehigh County Clerk of Courts operates no out-of-state offices, defendant reasons, interstate commerce has not been affected within the meaning of the RICO statute.

Clearly, however, *Vignola* held that defendant's racketeering activity need not affect interstate commerce; rather, the named *enterprise*, not the individual defendant, must be engaged in or affecting interstate commerce. *See id.* at 1098–99. *See also United States v. Haley*, 504 F.Supp. 1124 (E.D.Pa.1981). The *Vignola* court premised its ruling upon the plain reading of the statute, the legislative history and the Supreme Court's analysis of Congress' ability to proscribe wholly *intrastate* activities which affect interstate commerce.

The RICO statute, 18 U.S.C. § 1962, states in relevant part that

> [i]t shall be unlawful for any person to receive any income derived, directly or indirectly, from a pattern of racketeering activity ... in ... the operation of any *enterprise which is engaged in, or the activities of which, affect interstate commerce.* (emphasis added)

This "plain language" compels the conclusion that, in order to criminalize an individual's conduct, he must operate an enterprise affecting interstate commerce through a pattern of racketeering activities. *See United States Railroad Retirement Board v. Fritz*, ── U.S. ──, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), *Andrus v. Allard*, 444 U.S. 51, 56, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979), *Southeastern Community Col-*

*lege v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). To limit the statute's scope to *interstate* racketeering activity, Congress could have interjected the word "interstate" between the word "of" and the words "racketeering activity" to insure that the statute would penalize those who "receive income ... from a pattern of *interstate* racketeering activity". Congress did not do so and, in fact, declared that the statute should be "liberally construed". *See Congressional Statement and Finding of Purpose*, Pub.L. No. 91–452, 84 Stat. 922–23 (1970). Finally, *Vignola* relied upon *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), where the Supreme Court, holding that the Commerce Clause reaches wholly *intrastate* "loansharking", reasoned that so long as the defendant is a "member of the class" which engaged in federally interdicted conduct and that the "class of activities" is properly within the reach of federal authority, courts have "no power to excise, as trivial, individual instances" of the class. *Id.* at 154, 91 S.Ct. at 1361 (citation omitted). The critical inquiry under *Perez* is whether defendant's alleged acceptance of bribes, which supposedly constitute the pattern of racketeering activity, places his conduct within the class of activities properly within reach of the federal power. *See* 18 U.S.C. §§ 1961(1) and (5). To answer this question, courts simply determine whether Congress had a rational basis for finding that the regulated activity affects commerce, and, if such a basis exists, whether the regulatory means selected by Congress are reasonable and appropriate. *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979), *cert. denied sub nom. Little v. Brown*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), *United States v. Sacco*, 491 F.2d 995, 999 (9th Cir. 1974) (*en banc*), *United States v. Ceraso*, 467 F.2d 653, 657–58 (3d Cir. 1972). In enacting RICO, Congress found that

> organized crime ... highly sophisticated and diversified ... drains billions of dollars from America's economy by unlawful conduct and ... corruption ... [and that

it] corrupt[s] our democratic processes ... [and] seriously burden[s] interstate and foreign commerce.

*Congressional Statement and Finding of Purpose, supra.* Defendant has neither alleged nor demonstrated that Congress' findings lack a rational basis or that the means which Congress chose to rid the economy of a recognized menace are irresponsible or inappropriate.

Moreover, most courts do have an effect upon interstate commerce, *United States v. Vignola,* 464 F.Supp. at 1097, as do sheriff's departments, *United States v. Baker,* 617 F.2d 1060, 1061 (4th Cir. 1980), and the offices of prosecuting attorneys, *United States v. Altomare,* 625 F.2d 5, 8 (4th Cir. 1980), all of which place interstate telephone calls, purchase supplies and materials through interstate commerce and involve non-citizens of the forum state in litigation. In summary, RICO is a proper exercise of federal power. The indictment sufficiently states facts alleging that defendant's enterprise activities affected interstate commerce. Defendant's motion will be denied.

Second, defendant moves to dismiss on the grounds of preindictment delay. Defendant claims that, prior to notification in September 1980 that a grand jury had targeted him for investigation, federal officers questioned him repeatedly for several months and that the resulting five-month delay in return of the indictment prejudiced him by depriving him of his Fifth Amendment right to due process and his Sixth Amendment right to a speedy trial. Hence, defendant argues, the indictment should be dismissed.

Defendant does not assert that his right to a speedy post-indictment trial has been violated. *See* Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* and *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Rather, defendant complains that the government's delay in *returning* the indictment prejudices his right to a speedy determination of the charges. In *United States v. Marion,* 404 U.S. 307, 320–21, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Supreme Court, holding that a formal indictment or information or the "actual restraints imposed by arrest" triggers application of the Sixth Amendment guarantee to a speedy trial, declined to extend the reach of this right to the period *prior* to arrest. The court reasoned that statutes of limitation and the Due Process Clause provide defendants with sufficient protection against the possibility of prejudicial pre-accusation delay. *Id.* at 323–24, 92 S.Ct. at 464–65. Declining to define precisely the limitations which the Due Process Clause imposes upon pre-indictment delay, the court stated that dismissal would be warranted if defendant could show *at trial* not only that the delay substantially prejudiced his rights to receive a fair trial but also that the government intentionally delayed the indictment to gain a tactical advantage. *Id.* at 323–24, 92 S.Ct. at 464–65.

Further eroding defendant's argument, the court subsequently noted in *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977), that a mere allegation of prejudice will not invoke the "limited role" of the Due Process Clause in protecting against pre-indictment delay. In fact,

> *proof of actual prejudice* makes a due process claim concrete and ripe for adjudication[; it does not] make[s] the claim automatically valid. (emphasis added)

To hold otherwise, the court concluded, would compel prosecutors to initiate criminal proceedings as soon as they were legally entitled to, "resolving doubtful cases in favor of early—and possibly unwarranted—prosecutions". *Id.* at 793, 97 S.Ct. at 2050. However, "fair play and decency" require a prosecutor to refrain from seeking indictments until he is "*completely satisfied* that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt". *Id.* at 795, 97 S.Ct. at 2051 (emphasis added). Stressing that courts should not truncate criminal proceedings merely because they disagree with prosecutors' decision when to indict, *Lovasco* concluded that investigative delay does not deprive a defendant of due process, "even if his defense might be somewhat prejudiced

by the lapse of time". *Id.* at 790, 796, 97 S.Ct. at 2048, 2052 (emphasis added).

Finally, where almost two years had elapsed between the date of the last overt act charged in furthering a conspiracy and the date on which the grand jury returned the indictment, this Court recently refused to dismiss an indictment. *United States v. Heldon,* 479 F.Supp. 316, 320 (E.D.Pa.1979). "Mere speculation" that defendants had been prejudiced by the delay failed to warrant dismissal, which would, in effect, "judicially fashion a shorter statute of limitations". *Id.* Accordingly, defendant's motion to dismiss for pre-indictment delay will be denied.

■ Defendant also seeks dismissal, and contemporaneously a bill of particulars. Characterizing the indictment as unreasonably and impermissibly vague, defendant considers its failure not only to apprise him precisely of the exact times, dates and places of the offense charged but also to specify the official decisions tainted by his illicit relationship with the bailbondsman violative of the Due Process and Equal Protection Clauses of the Constitution.

Indisputably, this motion lacks merit. The indictment virtually tracks the wording of the relevant federal statute verbatim. *See* 18 U.S.C. §§ 1961, 1962(c), as well as the necessary predicate state offense, *see* 18 Pa.Cons.Stat.Ann. § 4701 (Purdon). *See also United States v. Davis,* 576 F.2d 1065, 1067 (3d Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), and *United States v. Addonizio,* 451 F.2d 49, 58 (3d Cir.), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). Therefore, the indictment adequately informs defendant of the offense with which the government charged him. *See United States v. Carvin,* 555 F.2d 1303, 1305 (5th Cir. 1977), *cert. denied,* 434 U.S. 971, 99 S.Ct. 523, 54 L.Ed.2d 461 (1978), and *United States v. Haley,* 581 F.2d 723, 726 (8th Cir. 1978), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 681 (1979). Defendant's motion to dismiss will be denied.

■ Finally, defendant moves for a bill of particulars, which may be granted

to inform the defendant of the nature of the charges against him so that he may adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.

*United States v. Addonizio,* 451 F.2d at 63–64. *See also* Fed.R.Crim.P. 7(f) and *United States v. Heldon,* 479 F.Supp. at 323, and *United States v. Peifer,* 474 F.Supp. 498, 500 (E.D.Pa.), *aff'd,* 615 F.2d 1354 (3d Cir. 1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). Defendant is not entitled, however, to a preview of the government's case or wholesale discovery of the prosecutor's file. *United States v. Armocida,* 515 F.2d 49, 54 (3d Cir.), *cert. denied sub nom. Gazal v. United States,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), *United States v. Peifer,* 474 F.Supp. at 501. In the case at bar, the government charged defendant with accepting numerous bribes and identified payment thereof in each instance as "in Allentown, Pennsylvania" and the time as June 1978 in Paragraph 5(a), August 1978 in Paragraph 5(b), May 4, 1979 in Paragraph 5(c), and finally in Paragraph 5(d) "in or about 1977 through in or about 1979". In the first three transactions the government specified the amounts of money which defendant accepted. However, in the final paragraph the government charged only that defendant "accepted money and other considerations" from the bailbondsman. The government also did not allege the manner in which the bribes influenced defendant's official conduct or specify the exact location within the city of Allentown where the government believes the illegal transactions occurred.

■ However, the government need not allege the official acts and decisions which the receipt of money actually influenced, for "the gravamen of the offense ... is the *solicitation or acceptance* of a bribe, not the delivery of its *quid pro quo*". *United States v. Davis,* 576 F.2d at 1067 (emphasis added). Neither is defendant entitled to know the situs within the city of Allentown where the government believes that he so-

licited or accepted the first three bribes or the exact date of this conduct. Such a particularization would amount to "wholesale discovery" of the government's evidence and lies beyond the scope of Fed.R. Crim.P. 7(f). *United States v. Armocida*, 515 F.2d at 54, *United States v. Addonizio*, 451 F.2d at 63, *United States v. Heldon*, 479 F.Supp. at 323, *United States v. Hubbard*, 474 F.Supp. 64, 80–81 (D.D.C.1979).

Defendant's other request for a bill of particulars specifying in greater detail the dates upon which he accepted *undisclosed* amounts of money in Paragraph 5(d) will be granted. Defendant *is* entitled to know the amount of money and a narrower time frame within which he purportedly received payments from the bailbondsman. If the government cannot allege Paragraph 5(d) with the same specificity as in Paragraphs 5(a) and (b), proof thereof will not be admitted at trial.