**UNITED STATES of America, Appellee,**

v.

**Dominic Lasonto WARREN, Appellant.**

**No. 93–2241.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1993.

Decided Feb. 7, 1994.

---

Counsel who presented argument on behalf of the appellant was Michael William McNabb of Burnsville, Minnesota.

Counsel who presented argument on behalf of the appellee was Andrew Stephen Dunne of Minneapolis, Minnesota. The names of Francis X. Hermann and Andrew Dunne of Minneapolis, Minnesota, appear on the brief of the appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Dominic Lasonto Warren (Warren) appeals the district court's [1] judgment entering a jury verdict on six drug-related offenses. Warren contends reversible error occurred at multiple levels in the trial proceedings. A review of the record fails to disclose such error. We affirm.

## I. BACKGROUND

In the summer of 1992, Warren became the focus of a cocaine trafficking investigation conducted by a task force of law enforcement officers. An undercover agent made four hand-to-hand purchases of cocaine from Warren. Warren was arrested after the fourth cocaine buy when he observed the drug task force's surveillance team and attempted to flee. At the time of the arrest, the officers found not only cash but also a loaded .38 caliber Smith & Wesson handgun in Warren's right front pants pocket.

After Warren was arrested, one of the officers applied for a search warrant to allow the officers to search Warren's residence and automobile. However, immediately prior to the search warrant application, the officers secured and conducted a protective sweep of Warren's residence. Then, once in receipt of the search warrant, the officers searched Warren's residence and vehicle discovering various drug paraphernalia, another weapon, and marijuana.

Warren was charged with four counts of distribution in violation of 21 U.S.C. § 841(a) (1988), one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Supp. IV 1992), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (1988). At trial, the primary factual dispute concerned whether Warren carried the handgun during and in relation to a drug trafficking offense.

## II. DISCUSSION

Warren asserts on appeal that his due process rights were violated by the officers'

investigation, his constitutional rights were violated through the jury selection process, and both the grand jury and the petit jury were erroneously instructed on the elements of § 924(c). He further contends the district court erred when it denied him access to the ministerial records of the grand jury, denied his motion to suppress evidence obtained from the search of his home and automobile, denied his motion to stipulate to his prior felony conviction, allowed cross-examination regarding his prior drug transactions, and refused to stack the acceptance of responsibility adjustment under the Sentencing Guidelines. We find no meritorious claim, and we affirm.

### A. Due Process Violation

■ Because the law enforcement officials repeatedly purchased cocaine from Warren, Warren now asserts the actions of the officers violated his due process rights. Specifically, Warren argues that the officers' actions were not restrained by any guidelines or standards and thus were arbitrary and capricious. He maintains not that the officers discriminated against him, but that they arbitrarily continued to buy drugs from him, thereby increasing his ultimate sentence. The district court considered this argument as one describing sentencing entrapment, although Warren denies this is his claim. *See United States v. Barth,* 990 F.2d 422, 424 (8th Cir.1993).

■ Sentencing entrapment is " 'outrageous official conduct [that] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant." *United States v. Rogers,* 982 F.2d 1241, 1245 (8th Cir.) (quoting *United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993). The claim of sentencing entrapment we rejected in *Barth* involved seven undercover

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minn-

esota.

purchases and 50.5 grams of cocaine. 990 F.2d at 423. Here by contrast we have four undercover purchases and 107.4 grams of cocaine base and 111 grams of cocaine. And here, the law enforcement officers articulated legitimate goals, such as uncovering Warren's supply source, justifying the four purchases of cocaine. Hence, had Warren phrased his claim in terms of sentencing entrapment, it would fail because the government's actions simply were not outrageous.

■ Warren asserts that the convictions on the drug distribution counts should be reversed because the government's conduct was arbitrary and capricious and thus violated the due process clause. However, such a due process claim must show that "the government conduct was 'so outrageous that due process principles should bar the government from invoking judicial processes to obtain a conviction.'" *United States v. Dougherty*, 810 F.2d 763, 770 (8th Cir.1987) (quoting *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973)). In *Dougherty*, the predisposed defendant bought food stamps from a government agent. The *Dougherty* court declined to find that this behavior "trigger[ed] fundamental fairness concerns" implicating the due process clause. *Id.* We recognized in *Dougherty* that the best way for the government to deter the illegal sale of food stamps may be for the government to provide the stamps to a willing and predisposed buyer. *Id.* Similarly, here, the government's behavior does not trigger "fundamental fairness concerns" implicating the due process clause. The drug task force's goals included investigating the source of Warren's drug supply. The best way to eliminate illegal drug sales may be to make repeated undercover buys from a single source. Thus, Warren's due process claim likewise fails because the government's conduct was not outrageous.

## B. Jury Selection

■ Warren contends that both his Sixth Amendment guarantee to a jury made up of a fair cross-section of his community and his Fourteenth Amendment right to equal protection were violated by the jury selection process used by the district court. Warren, an African–American, asserts the numerical representation of African–Americans on the petit jury venires in the Fourth Division of the District of Minnesota is sufficient evidence to establish these constitutional violations. We disagree.

Warren's evidence consists of figures from the last seven venire pools in the Fourth Division.[2] Averaging the figures together, a total of 0.9% of the pool were African–Americans; while, according to the 1990 census figures, 3.0% of the population of the Fourth Division is African–American. The jurors in the District of Minnesota are chosen from voter registration, Minnesota driver's license, and state identification card lists. The names from these lists are placed in a master jury wheel from which jurors' names are randomly selected.

■ A jury selection process violates the Sixth Amendment's fair cross-section requirement if (1) the excluded group is distinctive in the community, (2) the representation of this group in the venires is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to "systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). We agree that the alleged excluded group, African–Americans, is distinctive in the community, but we refuse to review this scant record for the fairness and reasonableness of the representation of African–Americans in the venire. Even assuming that Warren had established unreasonable representation of African–Americans in the venire pool, Warren has failed to offer evidence of the "systematic exclusion of [African–Americans] in the jury-selection process." *See id.* Warren appears to assume the numerical data, *see*

---

**2.** The following is the relevant data provided by Warren.

| Pool | % African–American | Ratio |
|---|---|---|
| Jan–Feb 1992 | 0.8 | 2/239 |
| Mar–Apr 1992 | 0.8 | 2/250 |
| May–June 1992 | 0.0 | 0/225 |
| July–Aug 1992 | 0.4 | 1/225 |
| Sept–Oct 1992 | 1.4 | 3/222 |
| Nov–Dec 1992 | 1.8 | 4/218 |
| Jan–Feb 1993 | 1.7 | 4/236 |

*supra* note 2, adequately proves underrepresentation and thus contends the numbers alone are sufficient proof of systematic exclusion. We disagree.

Based upon Warren's data, and lacking any discernable reason for the differences amongst the jury pools other than chance, we decline to find that the District of Minnesota's jury selection process systematically excludes African–Americans. Moreover, Warren has failed to offer any other evidence of systematic exclusion. For example, he has failed to point to a defect in the process itself that serves to exclude African–Americans. *See United States v. Garcia,* 991 F.2d 489, 491 (8th Cir.1993) (citing *Duren,* 439 U.S. at 364, 99 S.Ct. at 668). Nor has Warren alleged that the voter registration, driver's license, or state identification requirements impose any discriminatory qualifications on applicants. *See id.* at 492. Nor has Warren shown that the administration of the juror selection plan [3] is discriminatory. *See id.* Consequently, we find no Sixth Amendment violation.

■■■ For similar reasons, Warren's Fourteenth Amendment equal protection claim is also without support. To establish an equal protection violation in this context, Warren must show the jury selection process (1) resulted in a substantial underrepresentation of a suspect class to which Warren belongs, here African–Americans; and (2) is susceptible to abuse or is not racially neutral. *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). We decline to consider the first element in light of the scant data provided in this record. And, because Warren has failed to point to any evidence from which this court can find a defective jury selection procedure or racially biased procedure, we find no Fourteenth Amendment violation.

**3.** The Plan of the United States District Court for the District of Minnesota for the Random Selection of Grand and Petit Jurors.

**4.** Section 924(c)(1) states in pertinent part:
(c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime

## C. Jury Instructions on the Section 924(c) Offense

■■■ Warren asserts that the prosecutor erroneously instructed the grand jury and the district court erroneously instructed the petit jury on an element of the § 924(c) offense.[4] A § 924(c) conviction requires that a defendant (1) use or carry a firearm (2) during and in relation to (3) either a drug trafficking crime or a crime of violence. 18 U.S.C. § 924(c). Warren concedes that he committed a drug trafficking crime and that he carried a firearm. He argues, however, that neither the grand jury nor the petit jury was properly instructed on the "during and in relation to" element of the offense. In short, Warren claims that neither jury understood from its instruction the scope of the required nexus between the gun and the drug trafficking offense. We disagree.

■■■ The "during and in relation to" language of § 924(c) requires a connection between the drug transaction and the gun; mere possession is not sufficient. *See United States v. Lyman,* 892 F.2d 751, 753 (8th Cir.), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). The government need not prove that the defendant brandished or discharged the gun. *Id.* And, a jury may permissibly infer that a defendant intended to use a weapon in connection with the drug trafficking offense if that weapon is present and available in light of evident need. *Id.; accord United States v. Michaels,* 911 F.2d 131, 132 (8th Cir.1990) (gun must be available to the defendant, and the gun's availability must have increased the likelihood that the crime would be successful), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991).

Count V of the indictment before the grand jury used the statutory language to describe the nexus required with the drug offense. The prosecutor, when explaining the § 924(c) offense to the grand jury, accurately reiterated relevant law pertaining to

... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
18 U.S.C. § 924(c)(1) (Supp. IV 1992).

§ 924(c) and did not mislead the jury. We find that the grand jury was adequately instructed on the requirements for § 924(c). *See United States v. Zangger,* 848 F.2d 923, 925 (8th Cir.1988) ("prosecutor is under no obligation to give the grand jury legal instructions"); *accord United States v. Larrazolo,* 869 F.2d 1354, 1359 (9th Cir.1989) (prosecutor has no duty to outline the elements of the crime as long as the elements are at least implied and the instructions are not flagrantly misleading).

 Warren also challenges the petit jury instruction. We find this challenge likewise to be without merit. An examination of the jury instruction reveals that it is clear and it properly instructed the jury on the requisite elements of the crime.

### D. Evidentiary Rulings

Warren contends he was prejudiced by four evidentiary rulings of the district court. We find no merit to three of his claims and may not review the fourth.

 The district court denied Warren's pretrial request to disclose the grand jury's ministerial records because Warren failed to allege any particularized need for the records. *See* Fed.R.Crim.P. 6(e)(3)(C)(ii); *accord United States v. Knight,* 547 F.2d 75, 78 (8th Cir.1976). We agree with the district court that a bare allegation that the records are necessary to determine if there may be a defect in the grand jury process does not satisfy the "particularized need" requirement.

 Warren contends the district court erred when it denied his motion to suppress the evidence obtained in the search of his residence and vehicle. Prior to the search of Warren's residence, the police entered Warren's home, removed the occupants, and conducted a sweep to ensure that the residence was devoid of weapons and people. The officer who obtained the search warrant testified at the suppression hearing that he did not enter the premises, and that he was given no information regarding the contents of the premises by the entering officers.

Warren asserts that the initial entry and sweep were illegal and thus tainted the subsequent search pursuant to a warrant. Assuming, without finding, that the warrantless entry was illegal, we nevertheless find that the district court properly denied the motion to suppress.

The motion to suppress was properly denied because the search warrant was not based on any evidence discerned from the entry and protective sweep. *See Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984). In *Segura,* the Supreme Court found that evidence obtain pursuant to a valid search warrant, but after an illegal entry, was properly admissible because the government learned of the evidence from an independent source. *Id.* Similarly, here, the search warrant was not based upon any information obtained from the entry or the protective sweep, rather the warrant was based upon wholly independent information. The exclusionary rule does not apply to evidence that is not tainted by a prior unconstitutional search or seizure. *See id.* at 804, 104 S.Ct. at 3385.

 The district court refused to allow Warren to stipulate to his prior felony conviction and instead allowed the government to prove this essential element of an 18 U.S.C. § 922(g) offense.[5] Warren alleges the government should not have been allowed to prove this essential element of the crime. We disagree. It is well established in this circuit that the government need not accept a felon's stipulation to a prior felony conviction. *United States v. Amerson,* 938 F.2d 116, 119 (8th Cir.1991).

 Over Warren's objection, the district court allowed the government to cross-examine Warren regarding his prior uncharged drug trafficking activity. Warren asserts this ruling violated his privilege against self-incrimination. Warren, however, testified on direct examination to his prior drug trafficking activity. Hence, we may not review this claim. Warren, by taking this preemptive strike, waived his right to appeal the government's cross-examination on this issue. *See*

---

**5.** Section 922(g) makes it unlawful for any person convicted of a crime punishable by more than one year of imprisonment to possess a firearm. 18 U.S.C. § 922(g) (1988).

*United States v. Brown,* 956 F.2d 782, 787 (8th Cir.1992) (holding that introduction of a stale prior conviction on direct examination precludes review of the earlier objection on appeal); *accord United States v. Vega,* 776 F.2d 791, 792 (8th Cir.1985).

### E. Sentencing Guidelines

■ Warren argues that a recent amendment[6] to the Sentencing Guidelines should allow him to stack adjustments for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a) (1993). Thus, according to Warren, instead of decreasing his total offense level by two points, the district court should have decreased it by twelve points, two points for each of the six counts. Again, we disagree. The Sentencing Guidelines provide specific application instructions. *See id.* § 1B1.1. Those instructions direct the district court to "[a]pply the adjustment as appropriate for the defendant's acceptance of responsibility," *id.* § 1B1.1(e), *only after* the requisite offense level includes all grouped offenses. *Id.* § 1B1.1(d). Hence, the application instructions explicitly preclude stacking the acceptance of responsibility adjustment.

### III. CONCLUSION

Accordingly, we find no merit to Warren's claims, and we affirm the judgment of the district court.

---

**6.** In November of 1992, U.S.S.G. § 3E1.1(a) was amended to read, "[i]f the defendant clearly demonstrates acceptance of responsibility for his *offense,* decrease the offense level by 2 levels" (emphasis added). Previously, the underlined language read "criminal conduct."