**UNITED STATES of America,**

v.

**Renato P. MARIANI, Michael L. Serafini, Leo R. Del Serra, Alan W. Stephens, Robert Giglio, and Frank Serafini, Defendants.**

No. 3:CR–97–225.

United States District Court, M.D. Pennsylvania.

April 17, 1998.

Bruce Brandler, Harrisburg, PA, for U.S.

Thomas Carrol, Mark Cedrone, Philadelphia, PA, for Mariani.

Haward Klan, Creed Black, Philadelphia, PA, for M. Serafini.

Catherine Recker, Philadelphia, PA, for Del Serra.

Harold Kane, Scranton, PA, for Stephens.

Joseph Mancano, Philadelphia, PA, for Giglio.

Daniel Brief, Sal Cognetti, Scranton, PA, for F. Serafini.

## MEMORANDUM

VANASKIE, District Judge.

The defendants have moved, both collectively and individually, to compel discovery of certain evidence in the government's possession, such as witness statements that may contain exculpatory information or which may be used to cross-examine government witnesses at time of trial. The government, contending that it has properly met its discovery obligations at this time, states that it will produce the documents defendants seek one week prior to trial. Thus, the government is not contending that it lacks an obligation to turn over certain material; instead, the government asserts that it is not required to produce that material now.

In regard to the request for exculpatory material subject to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government will be ordered to produce any exculpatory evidence to the defendants within twenty (20) days from the date of this Memorandum and Order. In terms of impeachment material under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Jencks* Act material, the government is under no obligation to disclose such material prior to trial and its suggested disclosure one week prior to trial is sufficient and encouraged.

## I. BACKGROUND

On October 7, 1997, a federal grand jury in this District returned a 140–count indictment against six defendants, Renato P. Mariani, Michael L. Serafini, Leo R. Del Serra, Alan W. Stephens, Robert Giglio, and Frank Serafini. The first 134 counts essentially concern alleged illegal campaign contributions under the Federal Election Campaign Act, 2 U.S.C. §§ 431, *et seq.* Counts 135 through 138 concern obstruction of justice charges leveled against defendants Michael L. Serafini and Leo R. Del Serra. Count 139 charges defendant Robert Giglio with having presented perjured testimony to the grand jury. This is the only count in which Giglio is named as a defendant. Count 140 levels the same charge against defendant Frank Serafini, who is a Pennsylvania State Representative, having been elected to represent the 114th Legislative District in Pennsylvania. Defendant Frank Serafini is named as a defendant in the indictment only in Count 140.

The alleged conspiracy involved Empire Sanitary Landfill. Because Empire was barred from making corporate contributions to individual political campaigns, Empire allegedly solicited its employees to make contributions in their personal capacity and Empire would then reimburse its employees. Thus, Empire used its employees and other close associates as "conduits" for its contributions. These "conduits" eventually were granted immunity and testified before the grand jury.

In connection with the discovery in this manner, defendants have requested that the

government be ordered to produce the following material:

(1) The identity of unindicted co-conspirators;

(2) Exculpatory material under *Brady* and *Giglio;*

(3) Inconsistent or contradictory statements made by the conduit witnesses to (a) IRS agents during interviews, and (b) the grand jury;

(4) Exculpatory "rough notes" taken by IRS agents during the initial investigation of this matter; and

(5) *Jencks* Act statements prior to the trial.

(Transcript of Oral Argument (Dkt. Entry 145) at 69.)[1]

Defendant Frank Serafini also filed his own discovery motion, seeking:

(1) Statements of any and all witnesses, in particular Tom Harrison, who have provided exculpatory and/or inconsistent statements to the FBI and/or the grand jury;

(2) Statements of the SADCO employee who dealt with defendant Frank Serafini while repairing defendant Michael Serafini's car during the time in question;

(3) Statements of defendant Frank Serafini's father, sister, niece and nephew;

(4) Any and all statements defendant Frank Serafini provided to the FBI;

(5) Information concerning the handling of the grand jury, specifically (1) the dates of specific grand jury *subpoenas duces tecum* and the receipt date of the material requested; (2) the dates of impaneling the grand juries; and (3) the instructions to the grand jury by the United States concerning the perjury charge; and

(6) Access to the original tape used by the stenographer to record the testimony of Frank Serafini before the grand jury.

During the oral argument, the parties agreed to meet to review the original copy of the audio tape of defendant Frank Serafini's grand jury testimony. Therefore, defendant Frank Serafini's request for the audio tape was granted. (Dkt. Entry 132.) Further, this Court reviewed *in camera* the relevant FBI file containing statements of defendant Frank Serafini and concluded that such statements had no relevance to this proceeding. (Dkt. Entry 108.) Consequently, only items 1 through 3 and 5 are at issue here.[2]

## II. DISCUSSION

### 1. Identity of Unindicted Co-conspirators

The defendants have failed to cite any authority for their assertion that the identity of unindicted co-conspirators is discoverable under Rule 16. Rather, the defendants have encouraged this Court to construe their request as a motion for a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure.

■■■ "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him [so that he may] adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio,* 451 F.2d 49, 63–64 (3d Cir. 1971) (quoting *United States v. Tucker,* 262 F.Supp. 305, 308 (S.D.N.Y.1966)), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *see also United States v. Eufrasio,* 935 F.2d 553, 575 (3d Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 340, 116 L.Ed.2d 280 (1991); *United States v. Rosa,* 891 F.2d 1063,

---

1. Each defendant has not only filed an individual discovery motion, but has also joined with the other defendants in their discovery motions. At the oral argument on these discovery motions, the defendants represented that their requests centered around the above mentioned material.

2. The parties have completed their joint review of the audio tape of Frank Serafini's testimony before the grand jury. As a result of this review, the parties have submitted a joint status report, outlining the parties' respective positions with regard to the accuracy of the official grand jury transcript vis-a-vis the audio tape of those proceedings. (Dkt. Entry 150.) In this regard, the parties agree upon the majority of the corrections, while 12 other corrections are disputed. This Court has not yet determined the propriety of altering an official grand jury transcript, the accuracy of which has been certified and sworn to by an official court reporter.

1066 (3d Cir.1989); *United States v. Adams,* 759 F.2d 1099, 1113 (3d Cir.), *cert. denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985); *United States v. McDade,* 827 F.Supp. 1153, 1187 (E.D.Pa.1993), *aff'd in part, appeal dismissed in part,* 28 F.3d 283 (3d Cir.1994), *cert. denied,* 514 U.S. 1003, 115 S.Ct. 1312, 131 L.Ed.2d 194 (1995); *United States v. Joseph,* 510 F.Supp. 1001, 1005 (E.D.Pa.1981). In determining whether to grant a motion for a bill of particulars, a trial court must strike a "prudent balance" between the defendant's interest in securing information and the government's interest in not committing itself to facts before it is in a position to do so. *Rosa,* 891 F.2d at 1066.[3]

A bill of particulars is not intended to provide the defendant with the fruit of the government's investigation, but is instead intended to give the defendant the minimum amount of information necessary to permit the defendant to conduct his own defense. *United States v. Smith,* 776 F.2d 1104 (3d Cir.1985); *see United States v. Sourlis,* 953 F.Supp. 568, 579 (D.N.J.1996) (holding that a bill of particulars, unlike discovery, is not intended to provide the defendant with the results of the government's investigation); *United States v. Caruso,* 948 F.Supp. 382, 393 (D.N.J.1996) (same); *see also Eufrasio,* 935 F.2d at 575 (finding that a defendant is not entitled to "a preview of the government's case or wholesale discovery of the prosecutor's file"); *United States v. Giampa,* 904 F.Supp. 235, 280 (D.N.J.1995) ("Although Rule 7(f) is construed liberally, it does not permit defendant to receive wholesale discovery of the Government's evidence."); *McDade,* 827 F.Supp. at 1153 (same); *Joseph,* 510 F.Supp. at 1005 (same). A bill of particulars should be granted where the indictment is too vague or indefinite to reason-

ably allow a defendant to prepare his defense. *See Addonizio,* 451 F.2d at 64; *see also Giampa,* 904 F.Supp. at 280; *United States v. Nacrelli,* 468 F.Supp. 241, 250 (E.D.Pa.1979), *aff'd mem.,* 614 F.2d 771 (3d Cir.1980); *United States v. Feliziani,* 472 F.Supp. 1037, 1045 (E.D.Pa.1979), *aff'd mem.,* 622 F.2d 580 (3d Cir.1980); *United States v. Bloom,* 78 F.R.D. 591, 599 (E.D.Pa. 1977). As summarized by the Third Circuit:

A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that *minimum amount of information necessary* to permit the defendant to conduct his *own* investigation.

*Smith,* 776 F.2d at 1111(citations omitted) (emphasis in original); *see also Caruso,* 948 F.Supp. at 383 (finding that an indictment must only provide a minimal amount of information that allows a defendant to conduct his or her own investigation).

In this case, the defendants seek to require the government to make legal conclusions as to numerous individuals who were peripherally involved in this matter. In oral argument, the government candidly admitted that it had not formed any position as to whether many of the individuals involved in this matter were co-conspirators. The indictment, however, has identified all of the conduits who were involved in the illegal activity. Therefore, the defendants have sufficient information to conduct their investigation and prepare their defense. The defendants have not presented any basis to justify the need to require the government to make legal conclusions involving these conduit witnesses so far in advance of trial.[4] Given that

---

**3.** The bill of particulars is designed to define and limit the government's case. Generally, when a bill of particulars is furnished to a defendant, the government is strictly limited at time of trial to the particulars which it has specified. *See United States v. Smith,* 776 F.2d 1104, 1111 (3d Cir.1985); *United States v. Neff,* 212 F.2d 297, 309 (3d Cir.1954); *see also United States v. Haskins,* 345 F.2d 111 (6th Cir.1965).

**4.** The defendants have referred to *United States v. Curran,* 20 F.3d 560 (3d Cir.1994), as a basis for their need to know the names of all of the unin-

dicted co-conspirators. (Transcript of Oral Argument (Dkt. Entry 145) at 98; Def's Letter dated Jan. 29, 1998 (Dkt. Entry 143).) In *Curran,* the defendant arranged for certain individuals to be reimbursed for their contributions to various political campaigns for federal office. Because the defendant used "conduit" donors to make his contributions, he was charged with causing election campaign treasurers to submit false reports to the Federal Election Commission in violation of 18 U.S.C. §§ 2(b) and 1001, which prohibits false statements to federal agencies. In this regard, the defendant was convicted for intention-

the defendants have sufficient information to conduct their own investigation and that it would be improper to require the government to commit to its case at this stage in the proceedings, defendants' request for the identity of all unindicted co-conspirators will be denied. *See United States v.. Conesa*, 899 F.Supp. 172, 175–76 (S.D.N.Y.1995) (denying a motion for a bill of particulars requesting, *inter alia*, the names of unindicted co-conspirators); *United States v. MacFarlane*, 759 F.Supp. 1163, 1170 (W.D.Pa.1991) ("[D]efendants' motion shall be denied inasmuch as they fail to show that the identities of any alleged unindicted co-conspirators is necessary to their preparation for trial."); *United States v. Lobue*, 751 F.Supp. 748, 756 (N.D.Ill.1990) (noting that the indictment was sufficient where it named the individuals involved and that the government was not required to label which individuals it considered unindicted co-conspirators).

## 2. *Brady* material, *Giglio* material and the Timing of Disclosure

■ While there is no general constitutional right to discovery in a criminal case,

*Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), courts have fashioned constitutional rules to protect a defendant's due process rights from being violated by the total nondisclosure of certain types of evidence. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* thus requires that the government disclose evidence that is both exculpatory and material. *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In other words, "material" evi-

---

ally causing other individuals to represent that they were making individual contributions, when the contributions were in fact coming from the defendant. *Id.* at 562–63. Because the election campaign treasurers believed that the individual conduits were making the contributions, they falsely reported this information to the Federal Election Commission. The Third Circuit determined that to support a conviction under 18 U.S.C. §§ 2(b) and 1001 for causing false statements to be made to a federal agency, the government had to prove that (1) the defendant knew that the election campaign treasurers were bound by law to report to the Federal Election Commission; (2) the defendant specifically intended to cause false reports to be filed; and (3) that the defendant knew that his conduct was unlawful. *Id.* at 570–71. Therefore, the identity of the conduit donors was not relevant to the determination of the defendant's guilt. In terms of the conspiracy count, the government was required to demonstrate an agreement to violate 18 U.S.C. §§ 2(b) and 1001. Finally, the Third Circuit determined that a decision as to whether there were multiple conspiracies would relate to whether the statute of limitations served to bar prosecution of any of the conspiracies. *Id.* at 572. If there was simply one ongoing conspiracy, then the statute of limitations defense would be unsuccessful. On the other hand, if there were multiple conspiracies, prosecution for an earlier conspiracy could be barred by the statute of limitations. *Id.* The defendants have not

raised the statute of limitation defense in this case.

Defendants contend that *Curran* is applicable in that "[i]t bears on the issue of 'willfulness' when an indicted defendant causes a dupe to violate the election laws, 18 U.S.C. § 2(b), as distinguished from acting in concert with culpable accessories, 18 U.S.C. § 2(a), all of which is in the setting of the false statement statute, 18 U.S.C. § 1001. This is at least *facially material* to the theory pled in our indictment." (Def's Letter dated Jan. 29, 1998 (Dkt. Entry 143).) *Curran*, however, does not require the government to disclose prior to trial whether it considers certain conduit witnesses to be co-conspirators. Rather, *Curran* requires that the government demonstrate that the defendants knew that the election campaign treasurers were required to report truthfully to the Federal Election Commission, that the defendants intended to cause false reports to be filed, and that the defendants knew that they were breaking the law. Consideration of whether a conduit witness is a co-conspirator or a dupe does not change the government's burden of proof. Moreover, a determination that a conduit was a co-conspirator has no evidentiary significance because *Curran* requires proof of an individual defendant's state of mind—not the knowledge and intent of other co-conspirators. *Curran*, 20 F.3d at 571–72.

dence must be of the type that its absence from the trial undermines a court's confidence in the trial's outcome. *See Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Veksler,* 62 F.3d 544, 550 (3d Cir.1995), *cert. denied,* 51 U.S. 1075, 116 S.Ct. 780, 133 L.Ed.2d 731 (1996).

Exculpatory evidence includes material that "goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Starusko,* 729 F.2d 256, 260 (3d Cir.1984); *Higgs,* 713 F.2d at 42. If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability, it will be held to be material. *Agurs,* 427 U.S. at 112, 96 S.Ct. 2392. Evidence which impeaches government witnesses comes within the *Brady* due process rule. *Giglio,* 405 U.S. at 154, 92 S.Ct. 763; *United States ex rel. Marzeno v. Gengler,* 574 F.2d 730, 735 (3d Cir.1978).

In *Higgs,* the Third Circuit announced that the district court has discretion to order pretrial disclosure of *Brady* material "to ensure the effective administration of the criminal justice system." *Higgs,* 713 F.2d at 44 n. 6; *see also Starusko,* 729 F.2d at 261 (noting the Third Circuit's "longstanding policy" of encouraging early disclosure of *Brady* material); *Gengler,* 574 F.2d at 739 (Seitz, C.J., concurring) ("a prosecutor's timely disclosure obligation with respect to [*Brady*] material cannot be overemphasized"); *Government of Virgin Islands v. Ruiz,* 495 F.2d 1175, 1179

(3d Cir.1974) (encouraging "an affirmative policy of prompt compliance" with *Brady*). The district court has discretion to determine when *Brady* material must be disclosed. *Starusko,* 729 F.2d at 261.

■ On November 7, 1997, this Court issued a Pretrial Order that provided that the government would "permit the attorneys for the defendants to inspect, copy or photocopy any exculpatory evidence within the purview of *Brady v. Maryland*" by November 24, 1997. (Dkt. Entry 39, ¶ 1(f).) The defendants argue that this provision constituted a dictate under *Higgs* requiring immediate disclosure of all *Brady* material, regardless of the early stage of this criminal prosecution. The government argues that the Pretrial Order was not intended to require the production of all potential *Brady* material; in particular, the government contends that *Giglio* and other impeachment-type material was not intended to be covered by the Pretrial Order. Thus, the government has refused to turn over the vast majority of what it considers to be *Giglio* evidence, *i.e.,* potential impeachment material.

Admittedly, the language in the Pretrial Order is broad. As noted, the courts of this Circuit have encouraged the government to provide early disclosure of *Brady* material. Although such early disclosure is encouraged, the government is justified in its concerns that disclosure of *Giglio* material at this stage in the proceeding could potentially undermine the government's case. The government is also correct in its argument that there is an important distinction between *Giglio* material and pure *Brady* material.[5]

---

5. The government has also asserted that *Brady* has no application where the defendants are able to conduct their own investigation to uncover the facts that the government has in its possession. *See Starusko,* 729 F.2d at 262 (" 'the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself' ") (quoting *United States v. Campagnuolo,* 592 F.2d 852, 861 (5th Cir.1979)); *see also United States v. Persico,* 621 F.Supp. 842, 869–70 (S.D.N.Y.1985) (finding that grand jury transcripts did not constitute *Brady* material because the defendant had access to the witnesses and could conduct his own interviews). In *Starusko,* however, the Third Circuit was considering a charge that a *Brady* violation entitled the defen-

dant to a new trial. *Id.* at 261–62. Because the defendant had access to the withheld information, the court determined that there was no *Brady* violation. *Id.* at 262 ("Here, because the defendant suffered no prejudice from the government's failure to disclose the report, there was no *Brady* violation."). *Starusko* should not be read as announcing a rule that the government may hold onto exculpatory information *prior* to trial where the defendant has access to such information. As noted by a subsequent Third Circuit decision:

*Starusko* held only that where defense counsel had independently discovered before trial an exculpatory statement that the prosecution failed to disclose, there was no prejudice, and thus no adverse effect on defendant's fair trial

In *Higgs*, the government refused to turn over *Giglio* material prior to trial, asserting that such disclosure would identify the government's witnesses and thereby place the witnesses' lives in danger. *Higgs*, 713 F.2d at 40. The district court ordered that the government disclose the *Giglio* material three days prior to trial. *Id.* at 41. The government received an emergency stay of the proceedings and appealed the district court's order requiring production of *Giglio* material prior to trial. The Third Circuit conceded that *Giglio* material did constitute *Brady* material. *Id.* at 44. But the Third Circuit determined that the dictates of *Brady* were satisfied if the *Giglio* material was provided to the defendant on the day that a given witness testified. *Id.* Thus, it is clear that *Giglio* impeachment material, while qualifying as *Brady* material, falls outside the Third Circuit's longstanding tradition of encouraging early disclosure of *Brady* material that is purely exculpatory. *See United States v. Bissell*, 954 F.Supp. 841, 869 (D.N.J. 1996) ("Although *Brady* material includes information that may be used to impeach the credibility of a prosecution witness, the Government is not obligated to disclose *Giglio* material prior to trial."), *aff'd mem.*, No. 96–5817, 1998 WL 107735 (3d Cir. Feb. 10, 1998); *Giampa*, 904 F.Supp. at 281–82 (noting that courts have routinely denied defendants' requests for *Giglio* material prior to trial).

As one court recently summarized:

*Brady* material consists primarily of two types of evidence: (1) *exculpatory evidence*, which goes to the heart of the defendant's guilt or innocence; and (2) impeachment evidence, which may affect the jury's assessment of the credibility of a prosecution witness. Of course, *Brady* material may encompass both exculpatory and impeachment evidence. Indeed, there is no "artificial bright-line between impeachment and exculpatory evidence." As discussed above, however, disclosure of all *Brady* material, including *Giglio* impeachment material, is governed by the same legal principle: evidence favorable to a defendant must be disclosed "in time for its effective use at trial." The determination of the precise time at which *Brady* material must be disclosed is necessarily governed by the specific nature of the *Brady* material at issue—i.e., whether it is exculpatory or merely impeachment evidence.

*United States v. Beckford*, 962 F.Supp. 780, 787–88 (E.D.Va.1997) (emphasis in original) (citations and footnote omitted). Impeachment evidence normally does not require counsel to be given substantial time in advance to review. *Id.* at 788. On the other hand, exculpatory evidence may require additional investigation and research to establish the innocence of an accused. *Id.* at 789. Therefore, exculpatory evidence should be produced well before a trial. *Id.*

rights. The language in *Starusko* [regarding defendant's knowledge of exculpatory material], at best, was only peripheral to its decision. Drawn from *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir.1979), that language states that "the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." But the holding in *Campagnuolo*, as in *Starusko*, did not rely on this statement, but rather on the narrow determination that the non-disclosure did not prejudice defendant's right to a fair trial.
*Government of Virgin Islands v. Martinez*, 780 F.2d 302, 309 (3d Cir.1985). In *Martinez*, the defendant confessed to the police, but failed to inform his attorney that such a confession existed. The government never turned over the confession. The defendant then argued that a *Brady* violation had occurred, while the government argued that no *Brady* violation occurred because the defendant knew that he gave a confession to

the government. The court noted that the confession could constitute *Brady* material if it contained exculpatory material, even though the defendant was aware of the confession. *Id.* at 310. The court held that disclosure under *Brady* was required because "a defendant may not have total recall of what he said to the police, especially if the statement was made under pressured circumstances, and the reality that defendant cannot, absent disclosure, know what the authorities recorded or retained of what he said." *Id.* at 309.

Likewise in this case, the mere fact that the defendants can interview certain witnesses who have given statements to the government does not necessarily satisfy the requirements of *Brady*. For instance, if the witnesses have given the government exculpatory information, there is no guarantee that the same exculpatory information will be given to the defendants. Therefore, the government's failure to release the material will deprive the defendants of potentially exculpatory information, a result that runs contrary to *Brady*.

With these distinctions in mind, the defendants' requests will be considered. In view of the nature of pure *Brady* material, the government will be required to produce any materials or statements that are exculpatory to the defendants within twenty (20) days of the date of this Memorandum and Order. The mere fact that the government may call a particular person to testify at trial does not alter this result.[6] To the extent that such exculpatory materials or statements may contain *Giglio* or *Jencks* Act material, the government may redact such additional information in its disclosures. *See Beckford,* 962 F.Supp. at 795 (approving of the redaction of *Giglio* material from the early disclosure of *Brady* material). Further, if the material or statements are not exculpatory, but *Giglio* and *Jencks* materials, then the government need not disclose such material until one week prior to the trial, as stipulated to by the government.[7]

### 3. Jencks Act Statements Prior to Trial

This Court cannot require early production of *Jencks* material. *See United States v. Murphy,* 569 F.2d 771, 773 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978). Therefore, the defendants' request must be denied. The government, however, has agreed to provide the defendants with *Jencks* Act material one week prior to trial. Such early disclosure will provide the defendants with ample time to review the material in preparation of trial.

6. At oral argument, the government conceded that such statements would be exculpatory. (Transcript of Oral Argument (Dkt. Entry 145) at 80–81.) Further, the government conceded that normally such exculpatory statements would be immediately turned over to the defendants. (*Id.* at 81.) The government argues, however, that the fact that the conduit witnesses will be called at trial transforms this exculpatory *Brady* material into *Giglio* impeachment material that need not be disclosed until the trial. (*Id.* at 81–82.) This argument is without merit.

7. Although this decision is by necessity broad, the government is expected to reassess the material in its possession and disclose to the defendants *any* exculpatory material. This ruling covers several categories of defendants' requests: (1) statements of conduit witnesses to IRS agents; (2) statements of conduit witnesses to the grand

### 4. Grand Jury Information

In order to be entitled to grand jury information during discovery in a criminal matter, a defendant must demonstrate to the Court a "particularized need" for the information that overrides the secrecy afforded to the grand jury. *See, e.g., Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 221, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Krasner,* 841 F.Supp. 649, 654–55 (M.D.Pa.1993). Defendant Frank Serafini seeks (1) grand jury *subpoenas duces tecum* and the receipt date of the material requested; and (2) the instructions to the grand jury by the United States concerning the perjury charge.[8] These claims will be considered *sertiam.*

### (a) Grand Jury Subpoenas and Dates of Responses

■ Defendant Frank Serafini contends that the government had information concerning Thomas Harrison's contributions prior to Frank Serafini's testimony before the grand jury. To this extent, defendant Frank Serafini contends that the government was required to specifically question him regarding the information it had concerning Thomas Harrison. Mr. Serafini claims that the failure of the prosecutor to reveal the evidence it possessed concerning Mr. Harrison would form a basis to dismiss the indictment. Thus, defendant Frank Serafini contends that he has demonstrated a particularized

jury; (3) rough notes of IRS agents or any other agents; (4) statements of any other individual, particularly Tom Harrison; (5) statements of the SADCO employee; and (6) statements of Frank Serafini's family members. All of this material must be reviewed by the government to determine whether it is exculpatory material or impeachment material. To the extent that the government has difficulty in determining in good faith whether certain material is *Brady, Giglio,* or *Jencks* Act material, the government is directed to file such material with this Court for *in camera* review.

8. Defendant Frank Serafini also requested the dates of the impaneling of the grand juries. As noted by the government, such information is available to the public through the Clerk of Court's Office.

need for the grand jury subpoenas as such subpoenas are necessary to demonstrate when the government received evidence regarding Thomas Harrison.

In his motion to dismiss the indictment, Mr. Serafini claimed that his due process rights were violated because the government had failed to question him regarding Thomas Harrison. In rejecting this argument, I stated:

> The documentary evidence, consisting of Thomas Harrison's check to the Dole Committee and a check payable to cash from the account of Frank or Louis Serafini, does not so clearly implicate Frank Serafini as a conduit for reimbursement of Mr. Harrison as to have warranted that the prosecutor confront Frank Serafini with the documents, even if they were in the prosecutor's possession at the time of Frank Serafini's grand jury appearance. The fact that the "truth averment" was not substantiated until after Frank Serafini testified does not preclude the government from relying on it to support its prosecution. Indeed, because a grand jury interrogation is not to be used to trap a witness into a perjury charge, it is to be anticipated that the "truth" will not be substantiated until after the alleged perjurer testifies. Further, that portion of the indictment alleging that Frank Serafini perjured himself regarding his knowledge of "another check" (Statement 3) has already been dismissed from the indictment. The only other statement that relates to Thomas Harrison is Statement 2. In that instance, Frank Serafini was questioned whether he knew why Michael Serafini had given him a check for $2,000, rather than $1,000, which would represent Frank Serafini's contribution. This was a precise question without any ambiguity. If the extra $1,000 was included to reimburse Thomas Harrison, then Frank Serafini could have answered the question truthfully. There was no

need for the government to specifically ask Frank Serafini about Thomas Harrison in the context of Statement 2 because Frank Serafini made clear that the $2,000 check had *no* connection to the Dole Committee. Under these circumstances, the government's failure to question Frank Serafini concerning Thomas Harrison does not constitute a due process violation.

(Memorandum and Order dated Apr. 7, 1998 (Dkt. Entry 169) at 23–24 (citation omitted) (emphasis in original).) Given that it has been determined that the government was under no obligation to question Mr. Serafini about Thomas Harrison, Mr. Serafini has failed to demonstrate a particularized need which would overcome the secrecy that attaches to grand jury subpoenas. *See* Fed. R.Crim.P. 6(e)(6) (requiring grand jury subpoenas to be kept under seal); *Durham v. United States Dep't of Justice*, 829 F.Supp. 428, 432 (D.D.C.1993) (refusing to disclose grand jury subpoenas as such disclosure would reveal the substance of the grand jury investigation), *app. dismissed*, No. 93–5354, 1994 WL 704043 (D.C.Cir. Nov. 29, 1994); *Cumis Ins. Soc., Inc. v. South–Coast Bank*, 610 F.Supp. 193, 199 (N.D.Ind.1985) (refusing to order the production of grand jury subpoenas). Therefore, defendant Frank Serafini's motion for disclosure of grand jury subpoenas and the dates information was received pursuant to those subpoenas will be denied.

**(b) Grand Jury Instructions**

■ Defendant Frank Serafini also contends that the indictment fails to demonstrate whether the grand jury collectively considered the five allegedly perjurious statements contained within the indictment. That is, Mr. Serafini contends that it is not clear whether the grand jury indicted him only after considering the five statements together as an indivisible whole.[9] Adding

---

9. Mr. Serafini also claims that the prosecutor improperly failed to present exculpatory evidence to the grand jury and that the grand jury instructions are relevant in terms of the prosecutor's treatment of inconsistent evidence. Mr. Serafini asserts:

> Based on information disclosed by the Government, Mr. Serafini believes that Thomas Harri-

son, a central witness to the alleged solicitation and reimbursement of campaign contributions which forms the basis of the perjury charge against Mr. Serafini, testified several times before the grand jury and made several statements to law enforcement officers, that his testimony and statements were inconsistent, and that *prosecutor failed to present the grand*

fuel to Mr. Serafini's fire, in a Memorandum and Order dated April 7, 1998, this Court determined that Statement 3 was too ambiguous to form the basis of a perjury charge. (Dkt. Entry 169, at 15.) Thus, Mr. Serafini now contends: "It is impossible to determine from the face of the indictment whether the grand jury believed that each alleged perjurious statement independently supported a perjury charge or whether the grand jury believed that the stricken Statement 3 was a necessary component of the single count alleging the violation [of] § 1623." (Def's Supp. Brf. (Dkt. Entry 175) at 1–2.) Therefore, Mr. Serafini contends that he has demonstrated a particularized need for disclosure of the grand jury instructions. In the alternative, Mr. Serafini requests that this Court review the instructions *in camera* to determine whether the instruction must be disclosed. (*Id.* at 2.)

■ The indictment contained five excerpts from Mr. Serafini's grand jury testimony. In the indictment, certain statements were underscored to designate which statements the grand jury determined to be perjurious. Mr. Serafini argues that the grand jury may have considered the underscored statements and determined that it could indict Mr. Serafini for perjury only if the underscored testimony, as a whole, was false. He further surmises that if this were the case, and the grand jury knew that Statement 3 could not be a part of the indictment,

the grand jury might not have indicted him. This strained argument cannot withstand scrutiny. First, there is nothing in the indictment to suggest that the grand jury believed that Mr. Serafini had committed perjury only if the 5 statements were considered as a whole. The indictment itself states that "the aforesaid underscored testimony of FRANK SERAFINI, as he then and there well knew and believed, was false...," (Indictment (Dkt. Entry 1) ¶ 5, at 59) plainly meaning that each of the underscored statements was believed to be false. Otherwise, there would be no need to highlight any particular statement or part of a statement. Second, the statements appear at different parts of the transcript, once again indicating that each statement was regarded as false. Third, the statement stricken from the indictment concerns a matter discrete from the other alleged perjurious statements. That is, it concerned the existence of checks connected to the investigation, whereas Statement 1, for example, was an unequivocal denial of being reimbursed for his political contribution. Finally, Mr. Serafini's argument ignores the presumption of regularity attending grand jury proceedings. In short, the grand jury carefully delineated the testimony that it deemed false and there is nothing to suggest that it intended to find that each individual statement, while standing alone, was *not* false.[10]

Frank Serafini relies upon *United States v. D'Alessio*, 822 F.Supp. 1134 (D.N.J.1993),

---

jury the prior inconsistent statements of Mr. Harrison to assist the jurors in evaluating Mr. Serafini's credibility. Any instructions given by the prosecutor to the jurors concerning these inconsistencies is relevant and material to Mr. Serafini's defense that the perjury charge against him was contrived and manufactured. (Def's Supp. Brf. (Dkt. Entry 63) at 15 (emphasis added).) This argument is meritless. The prosecutor is under no duty to disclose exculpatory evidence to the grand jury. *See United States v. Williams*, 504 U.S. 36, 55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (finding that district court's supervisory power over grand jury did not extend so far as to permit it to impose upon the prosecutor the legal obligation to present exculpatory evidence).

10. In terms of the dismissal of Statement 3, such dismissal does not call into question the grand jury's determination that Statement 3 was false. Rather, this Court determined that the prosecu-

tor's questioning was ambiguous, not that Frank Serafini provided truthful testimony. Thus, the striking of Statement 3 would not undermine the grand jury's conclusion that there is probable cause to believe Frank Serafini committed perjury even if instructed that it had to consider the underscored testimony as a whole because the grand jury could take into account Statement 3. Frank Serafini, however, cannot be prosecuted for Statement 3, which is the effect of this Court's ruling. The legal insufficiency of one out of five allegedly perjurious statements within a perjury count does not thereby require dismissal of the entire count. *Cf. United States v. Winchester*, 407 F.Supp. 261, 278 (D.Del.1975) (denying disclosure of grand jury vote and rejecting defendant's argument that the indictment could only be valid if each count were voted upon separately). Federal Rule of Criminal Procedure 6(f) only requires that the indictment be voted on as a whole—not that the grand jury vote upon each individual count.

to support his claim that the grand jury instructions must be reviewed to determined whether the grand jurors voted collectively or individually in relation to the underscored statements. In *D'Alessio*, the defendant, a county sheriff, was indicted on various charges in relation to his solicitation of campaign contributions for personal use. Under New Jersey law, public office holders were permitted to solicit certain contributions and receive gifts under certain circumstances. The indictment alleged that a certain rule of court prohibited the defendant from soliciting or receiving such personal gifts. *Id.* at 1138. The court determined that because the court rule did not clearly apply to county sheriffs, it was an inappropriate basis for the indictment. The court then had to determine whether the inclusion of this inappropriate basis for a mail fraud charge vitiated the other alleged foundations for the indictment. In holding that the striking of the court rule from the indictment undermined the other bases for the charges in question, Judge Sarokin stated:

In the present case, striking all references to Rule 1:16–2 from the indictment would so alter the nature of the fraud alleged as to constitute an improper amendment of the grand jury's charges. An analysis of paragraphs 2 and 3 indicates that the intangible rights part of the fraud scheme charged by the grand jury relies heavily on D'Alessio's alleged duties under Rule 1:16–2. Specifically, paragraph 3 refers to D'Alessio's scheme to deceive "attorneys and others into giving gratuities and gifts to an officer of the court in violation of the Rules of the Courts of the State of New Jersey." This language clearly relies on D'Alessio's posited duty not to accept gifts from attorneys or others who would have official business with his office.

\* \* \* \* \* \*

The wording of the indictment and the Government's explanation of it indicate that the intangible rights portion of the mail fraud charges is centrally based on the presumption that D'Alessio as a sheriff could not solicit or accept personal gifts.... Thus, the court concludes that the intangible rights portion of the fraud charges is fundamentally dependant on

D'Alessio's alleged duties under Rule 1:16–2. Striking any references to the Rule would therefore be improper. As stated in *United States v. Cryan*, 490 F.Supp. 1234 (D.N.J.), *aff'd*, 636 F.2d 1211 (3d Cir.1980), "[t]he power of a court to 'amend' an indictment is limited by the Fifth Amendment guarantee that an individual be tried only on a charge returned by a grand jury." *Id.* 490 F.Supp. at 1244. While striking all references to Rule 1:16–2 might yield an indictment which successfully charges an intangible rights fraud scheme, the question is whether it would charge the same intangible rights fraud scheme returned by the grand jury. *See Cryan*, 490 F.Supp. at 1244 n. 21. The court rules that it would not. The grand jury may have indicted the defendants on the sole premise that the mere solicitation of private gifts was prohibited. Reliance on that premise may have tainted all of their charges. Without it the grand jury may not have indicted the defendants at all or differently.

\* \* \* \* \* \*

The court simply cannot determine whether and to what extent the inclusion of Rule 1:16–2 in counts one through three (and the impression that it created that D'Alessio had a duty not to solicit gifts) led the grand jury to indict on the charges that D'Alessio knowingly, willfully and unlawfully devised a scheme to defraud the contributors to his March 1989 fundraiser of money and property. Because the court does not and cannot know the reasoning behind the grand jury's decision, it cannot allow either prong of the alleged mail fraud scheme to go forward. While the court acknowledges that the language of the indictment may be read to find that the tangible rights fraud scheme does not rely on D'Alessio's implied breach of duties as a court officer, the court cannot select among the theories on which the grand jury may have relied. *Cryan*, 490 F.Supp. at 1244 ("A court may not substitute its views or the views of the prosecution for those of the grand jury."). Because there is a distinct and reasonable possibility that the inclusion of Rule 1:16–2 in counts one through three infected both prongs of the indictment's alleged mail fraud scheme, the

court must dismiss these counts in their entirety.

*Id.* at 1144–46 (footnotes omitted).

Significantly, *D'Alessio* did not require production of grand jury instructions. The defect in the grand jury process was evident on the face of the indictment: the grand jury relied upon a violation of a court rule that was not clearly applicable to the defendant. That court rule was a central component of the indictment such that the indictment could not stand upon its removal. Here, by way of contrast, Statement 3 is not a central component of Count 140. *Each* of the remaining statements could support a perjury conviction without consideration of Statement 3. Under these circumstances, *D'Alessio* does not support disclosure of grand jury instructions.

Mr. Serafini also references *United States v. Twersky,* No. 92–1082, 1994 WL 319367 (S.D.N.Y. June 29, 1994). In that case, the grand jury had been instructed based upon certain precedent that was subsequently altered by a United States Supreme Court decision. *Id.* at *2–4. Thus, the district court reviewed the grand jury instructions *in camera* to determine whether the grand jury had been improperly instructed according to the stale precedent. Defendant Frank Serafini has pointed to no substantial decision relating to perjury that would call into question the instructions that the prosecutor may have given the grand jury. Therefore, *Twersky* is not persuasive.

In short, Mr. Serafini has failed to demonstrate a particularized need that would warrant disclosure of grand jury instructions. Although the indictment contained five different statements to form the basis of a perjury prosecution, the indictment does not contend that the perjury charge rested upon some "collective" consideration of these statements. On the contrary, it plainly reveals that *each* of the underscored excerpts

was considered perjurious. Moreover, only one of these statements must be perjurious to support a conviction. Given these considerations, defendant Frank Serafini's motion for disclosure of the grand jury instructions will be denied. *See United States v. Johnson,* No. 92–39A, 1994 WL 805243, at *7 (W.D.N.Y. May 26, 1995) ("As with a request for a review of grand jury minutes, the secrecy of the grand jury will not be compromised by an order to disclose grand jury instructions without a showing of 'particularized need.'"), *aff'd mem.,* 108 F.3d 1370 (2d Cir. 1997); *United States v. Abounnajah,* No. 91–146, 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991) ("A defendant is not routinely entitled to grand jury testimony or instructions in order to engage in a fishing expedition in hopes of uncovering an impropriety or defect in the proceedings where he had no basis to conclude that such an impropriety or defect exists."); *United States v. Keller,* No. 89–793, 1990 WL 6642, at *4 (N.D.Ill. Jan.5, 1990) ("[T]he question of disclosing instructions to the grand jury has been considered in a number of cases and in each case disclosure was denied."); *United States v. Winchester,* 407 F.Supp. 261, 277 (D.Del.1975) (denying request for grand jury instructions as it was based upon conjecture and surmise); *see also United States v. Warren,* 16 F.3d 247, 253 (8th Cir.1994) (finding that the prosecutor was under no legal obligation to give the grand jury any instructions).[11]

## III. CONCLUSION

Because the defendants have failed to demonstrate any need for the identity of unindicted co-conspirators, defendants' motion to reveal the identity of such unindicted co-conspirators is denied. In terms of exculpatory *Brady* material, the government is directed to disclose such evidence within twenty (20) days of the date of this Memorandum and Order. If such exculpatory

---

11. In its opposition brief, the government relied upon a colloquy with the grand jury to support its claim that there was no prosecutorial misconduct. In that colloquy, the government instructed the grand jury that they should withhold judgment and listen carefully to all of the evidence. This instruction was given in response to some of the grand jurors indicating that defendant Frank Serafini had perjured himself. Defendant Frank Serafini contends that he is entitled to this collo-

quy because the government relied upon it in responding to his claims of prosecutorial misconduct. Regardless of the government's reliance, however, defendant Frank Serafini has failed to demonstrate a particularized need for this information. In this regard, his claims of prosecutorial misconduct have been rejected. Further, there is nothing in the colloquy that could benefit defendant Frank Serafini. Therefore, his request will be denied.

*Brady* material contains *Giglio* and/or *Jencks* material, the government may redact such material from its disclosures. In terms of *Giglio* and *Jencks* Act material, the government has agreed to turn over this material one week prior to trial. If the government is uncertain as to whether certain evidence falls under *Brady, Giglio,* or the *Jencks* Act, the government is directed to submit such evidence to this Court for *in camera* review. Finally, defendant Frank Serafini has failed to demonstrate any "particularized need" for the grand jury information he seeks, therefore his request for grand jury information will be denied.[12]

---

12. Defendant Alan W. Stephens has also requested that the government produce its witness list. (Dkt. Entry 61.) It is well-established that the government has no obligation to produce its witness list during discovery in a criminal matter. *See United States v. DiPasquale,* 740 F.2d 1282, 1294 (3d Cir.1984) (noting that the government has no duty to disclose its witness list in a non-capital case), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1226, 84 L.Ed.2d 364 (1985). Therefore, this request must also be denied.